Floyd P. **BATES** and Jane O. **Bates**

v.

**PROVIDENT CONSUMER DISCOUNT COMPANY.**

Civ. A. No. 79–1926.

United States District Court,
E. D. Pennsylvania.

Nov. 19, 1979.

David A. Scholl, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Sheldon C. Jelin, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

The parties have filed cross motions for summary judgment in Civil Action 79–1926

1. The judgment was apparently held by M.J.M. Financial Services. Although plaintiffs assert that the loan was to satisfy a debt of $480.69, the disclosure statement, attached as Exhibit "A" to the complaint, provides a pay-out to M.J.M. Financial Services of $1,249.99.

2. Although Mr. Scholl was under no statutory duty to call the claimed errors to defendant's

in which plaintiffs are seeking statutory damages for alleged violations of the Truth In Lending Act, 15 U.S.C. § 1601, *et seq.* There is no genuine issue as to any material fact. There has been no violation of the requirements of the Truth In Lending Act by the defendant. Judgment will be entered in favor of the defendant and against the plaintiffs.

Plaintiffs, husband and wife, sought a loan from the defendant to satisfy a pre-existing judgment.[1] The documents for the loan were signed by plaintiffs on June 2, 1978. Copies of the documents were mailed by defendant to plaintiffs' attorney, David A. Scholl of Community Legal Services, with an accompanying letter requesting that defendant be advised if the documents did not meet with his approval. Plaintiffs, after consultation with their attorney, rescinded the transaction on June 5, 1978. No money had changed hands, no documents had been filed in any court; *plaintiffs had paid nothing and defendant had disbursed no funds.*

Defendant heard nothing further from Mr. Scholl[2] or anyone else concerning this transaction, until this action was filed, in forma pauperis, by David A. Scholl on May 31, 1979, which would appear to be one day prior to the action being barred by the one year limitation period.[3]

Plaintiffs' first claim of violation is that the note, security agreement, and disclosure statement include a $7.50 charge for "Optional Automobile Club Fee" (Exhibit A to complaint), which "plaintiffs do not recall purchasing and which they believe was improperly disclosed and improperly omitted from the Finance Charge."

15 U.S.C. § 1605(d) provides:

If any of the following items is itemized and disclosed in accordance with the

attention, it is quite apparent, in proceeding in this fashion, that the action simply seeks punitive damages for plaintiffs who suffered no damage at all, and attorney fees for Community Legal Services.

3. June 2, 1979 was a Saturday.

regulations of the Board in connection with any transaction, then the creditor need not include that item in the computation of the finance charge with respect to that transaction:

> (1) Fees and charges prescribed by law which actually are or will be paid to public officials for . . . perfecting . . . any security related to the credit transaction.

12 C.F.R. § 226.4(8)(b) provides:

> If itemized and disclosed to the customer, any charges of the following types need not be included in the finance charge:
>
> (1) Fees and charges prescribed by law which actually are or will be paid to public officials for . . . perfecting . . . any security related to the credit transaction.

An inspection of the statement reveals that the $7.50 charge was recorded opposite item 6, just above item 7 which relates to a "Mortgage Recording Fee."

In defendant's answer to the complaint, it is averred that the $7.50 charge was "erroneously placed opposite item 6 of the aforesaid note, Security Agreement and Disclosure Statement, when in fact it should have been placed opposite item # 7 entitled 'Mortgage Recording Fee.'"

■ As to the alleged violation arising out of the charge of $7.50 inserted on the line "Optional Auto Club Fee" instead of the following line "Mortgage Recording Fee," it should be noted that in plaintiffs' petition to proceed in forma pauperis, plaintiffs aver that they do not own an automobile. It should also be noted that they signed a contract which provided for a mortgage and judgment note, and that the $7.50 charge had been written in one space above that which referred to "Mortgage Recording Fee," an obvious, inadvertent mistake, and one which in no way affected the total cost or charge to plaintiff as reflected by the agreement. At the worst, it was no more than a harmless clerical error. It is my interpretation of the statute that this does not constitute a violation of the Act.

■ While the statute should be liberally construed to encourage private enforcement, *Mourning v. Family Publication Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Hannon v. Security Nat. Bank*, 537 F.2d 327 (9th Cir. 1976); *Ratner v. Chemical Bank New York Trust Co.*, 329 F.Supp. 270 (S.D.N.Y.1971),

> courts should not condone or give credence to suits which attempt to subvert this Act into an instrument of harassment and oppression of the lending industry.

*Sharp v. Ford Motor Credit Co.*, 452 F.Supp. 465, 468 (S.D.Ill.1978).

In *Jennings v. Edwards*, 454 F.Supp. 770 (M.D.N.C.1978), the Court stated in note 13, at 778:

> Considering all of the circumstances of the present case, even if the $4 filing fee should have been itemized or included in the finance charge, such violation, being the only one that could be attributed to the Bank, would be *de minimus* [sic] and would not result in the Bank's liability.

In *George v. General Finance Corp. of Louisiana*, 414 F.Supp. 33, 35–36 (E.D.La. 1976), the alleged violation involved a $2.00 mortgage recording fee and a $.75 notary fee for notarizing a chattel mortgage. Although the court found no violation, it made the following significant statement which, I believe, is applicable in the present case:

> While the Truth in Lending Act is to be interpreted liberally for the protection of borrowers, it is to be read in a manner calculated to protect borrowers, not as a maze containing obscure technical pitfalls for creditors. The statutory arguments advanced by the plaintiff rest on subtle interpretations of provisions that are ambiguous, at best. The amount involved in the alleged violations was $2.75. The maxim, "De minimis non curat lex," is a venerable and sensible principle of law. Congress did not intend by the Truth in Lending Act to make a federal case out of a lawful charge of $2.75 made by a money lender, fully revealed to the bor-

rower, even if the amount were set forth on the disclosure form in a manner that did not conform precisely to the regulations. Accord: *Gordon v. Backus Cadillac-Pontiac, Inc.*, U.S.D.C., S.D.Ga. (CCH Para. 98,689).

(Footnotes omitted).

Although I do not consider that placing the $7.50 charge on the wrong line of the form, where the amount of the charge was correct, and the error obvious on examination of the documents, to be a violation of the Act, even if considered as a violation, it was "de minimis" and in line with the foregoing cited cases, should not impose the civil penalties of the Act upon the defendant.

■ The only other alleged violation of the Act relates to the $24.25 charge for insurance on plaintiffs' household goods. Plaintiffs contend this item is "improperly and incomprehensively disclosed" as "personal property floater insurance" which "plaintiff did not voluntarily or knowingly propose to purchase" and therefore "charges for such insurance were not properly excluded from the Finance Charge," in violation of 15 U.S.C. § 1605(c) and 12 C.F.R. § 226.4(a)(6). Section 1605(c) provides:

Charges or premiums for insurance, written in connection with any consumer credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, shall be included in the finance charge unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.

Defendant's denial of improper disclosure of the personal property insurance is supported by the record. This insurance charge was properly included in the amount financed and properly excluded from the finance charge. The contract produced by defendant in response to plaintiff's request for production of documents as well as Exhibit "A" to plaintiffs' complaint, reveal in paragraph 17(2)(b):

Provident does not require Borrower to maintain personal property floater insurance If Borrower wishes to obtain such insurance, Borrower may choose the person through which such insurance is to be obtained. If such insurance is obtained through Provident the cost for 30 months' coverage is $24.25. See paragraph 3 above.

■ In a space approximately 1¼ inches to 1½ inches below that statement appears the respective signatures of the plaintiffs neither of whom is illiterate nor unable to read the English language. Furthermore, an inspection of Exhibit "A" to plaintiffs' complaint reveals item 3 which states "Optional Personal Property Floater Insurance Premium—Term—30 months" and a charge of $24.25. The required "clear, conspicuous and specific statement in writing" was provided which I hold as a matter of law, complied with the statute and the relevant regulation. *See Andrucci v. Gimbel Brothers, Incorporated*, 365 F.Supp. 1240 (W.D. Pa.1973), *aff'd*, 505 F.2d 729 (3d Cir. 1974); Corbin on Contracts, § 554 at 219–222.

The statements on the document as to the insurance comply literally with the statute and regulations. The separate types of insurance were itemized under life insurance, accident and health insurance, and personal property insurance. Each was carefully identified as "optional." A further statement just above the plaintiffs' signatures expressly states that the creditor does not require such insurance, the borrower may choose the person through whom to obtain such insurance if such insurance is desired, and if obtained through creditor, the charge that will be made. Whether or not plaintiff was advised of all of the terms of the personal property floater insurance policy is immaterial.[4]

---

4. If that were required, presumably all insurance policies, terms and conditions would have to be explained in detail. Nowhere does the statute require such detail.

Inasmuch as plaintiffs have failed to prove any violation of the Act,[5] plaintiffs' motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.

5. Having reached that conclusion, it is unnecessary to determine the merits of defendant's second affirmative defense that there was no consummated contract concerning the proposed loan agreement.