**KVK PARTNERSHIP,**
**Plaintiff-Appellant,**

v.

**Donald P. HODEL, Secretary of the Interior, the United States of America, and Jeanette G. Hall, Defendants-Appellees.**

**No. 84–1256.**

United States Court of Appeals,
Tenth Circuit.

April 19, 1985.

John B. Pound, Montgomery & Andrews, P.A., Santa Fe, N.M., for plaintiff-appellant.

Jeffrey P. Minear, Department of Justice, Washington, D.C. (William L. Lutz, U.S. Atty., and Raymond Hamilton, Asst. U.S. Atty., Albuquerque, N.M., and F. Henry Habicht, II, Asst. Atty. Gen., and Robert L. Klarquist, Dept. of Justice, Washington, D.C., with him on brief), for defendants-appellees.

* Honorable Frank H. Seay, United States District Judge for the Eastern District of Oklahoma, sitting by designation.

Before LOGAN, SEYMOUR, Circuit Judges, and SEAY,* District Judge.

SEYMOUR, Circuit Judge.

Plaintiff KVK Partnership (KVK) participated in a simultaneous drawing for an oil and gas lease on public lands conducted under the Mineral Leasing Act of 1920, 30 U.S.C. § 181 *et seq.* (1982). Although KVK was the first drawee, its application was rejected because it had failed to comply with two regulations applicable to partnership filings. When KVK's rejection was affirmed on administrative appeal, KVK filed this suit for judicial review, contending that the administrative decision was arbitrary, capricious, and an abuse of discretion. The district court affirmed the agency's ruling. KVK appeals and we also affirm.

The facts in this case are undisputed. In March 1977, J.W. Keeran, a partner in KVK, sent a copy of the KVK partnership agreement to the Bureau of Land Management (BLM)[1] so that KVK could begin filing for lease drawings. The BLM wrote back directing KVK to send a certified copy of the partnership agreement and to have each partner complete attached forms setting out citizenship and acreage holdings. The BLM letter also stated that "unless the three partners execute and file a statement in this office to notify us otherwise, all offers and documents must be signed by all three partners. Offers received with only one signature will be incomplete and subject to rejection." Rec., vol. I, at 58.

Keeran sent back a certified copy of the partnership agreement and the completed forms. He did not send a statement by the partners designating one partner to sign on behalf of KVK. The BLM acknowledged receipt of the certified copy and the completed forms. Its letter informed KVK that this information was now of record under a serial number, and further in-

1. The BLM is part of the Department of the Interior and administers the oil and gas lease program under the Mineral Leasing Act of 1920.

formed KVK that it must refer to that number on all of its future oil and gas filings.

In 1981, KVK submitted the lease application at issue here. The line on the card where KVK's assigned serial number was to be written had been left blank, and only one of the partners, Keeran, had signed the card. The BLM rejected KVK's application because it violated both the requirement that a showing of partnership qualifications accompany the application absent a reference in the application to the serial number, and the requirement that all partners sign the application absent a statement authorizing one partner to sign for the partnership.

KVK argues that because it had complied with all the disclosure requirements and was a qualified applicant, its violations were mere trivial technicalities. It contends that the regulations invoked by the BLM did not materially advance Congressional intent, and that the BLM's rejection of a qualified applicant for noncompliance was therefore arbitrary and capricious. In support of its argument, KVK relies on *Conway v. Watt*, 717 F.2d 512 (10th Cir. 1983).

KVK's reading of *Conway* is too broad, and its reliance on that case is therefore misplaced. In *Conway* a lease applicant had not written the date next to his signature on the drawing card as required by regulation. The BLM disqualified him, contending that the date was essential to fulfilling its statutory duty to assess an applicant's qualifications. We concluded that the signature date was a technical requirement which did not facilitate determining an applicant's qualifications, and that its omission could not therefore be per se grounds for disqualification. Contrary to KVK's assertion in the present case, we did not hold that the agency may never adopt per se requirements. Read in light of its facts, *Conway* holds only that a BLM

regulation may not be per se grounds for disqualification if it does not further a statutory purpose.

■ In reviewing the regulations in this case, we are mindful that "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). We may not set aside agency action that is "rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute." *Id.* Our task here is to determine whether, in contrast with *Conway*, the regulations at issue are reasonably related to legitimate agency activity within the scope of its authority.

■ The BLM is required by statute to award leases only to qualified applicants. *See* 30 U.S.C. § 226(c) (1982). In order to carry out this statutory mandate, at the time KVK filed its application the BLM required a partnership to submit information demonstrating its qualifications. *See* 43 C.F.R. § 3102.2–4 (1981). Instead of attaching this information to each application, the regulations permitted a partnership to prefile its qualifications and then refer in its application to the serial number assigned to this information by the BLM. *See* 43 C.F.R. § 3102.2–1 (1981).[2] The BLM contends that requiring the applicant to supply either its qualifications or the serial number with the drawing card facilitated a speedy and efficient determination of a drawee's qualifications. The BLM argues that it therefore did not abuse its discretion by disqualifying KVK because KVK had not complied with a requirement reasonably related to a legitimate goal. We agree. In *Ballard E. Spencer Trust,*

2. We note that these regulations are no longer in effect. The fact that the BLM has chosen to pursue its statutory obligations by other methods, however, does not mean that the regulations challenged here were not rationally related to the statutory purpose. *Cf. Motor Vehicle Mfrs. Ass. v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

*Inc. v. Morton,* 544 F.2d 1067 (10th Cir. 1976), this court concluded under similar facts that the BLM had not acted arbitrarily by rejecting a corporate first drawee who had failed to refer to its serial number on its drawing card. That holding is equally applicable here.

The BLM regulations also required a partnership to execute a statement identifying those authorized to act on its behalf. *See* 43 C.F.R. § 3102.2–4(a)(3). Absent such a statement, each partner had to sign the application. The BLM contends that without this provision BLM administrators would be forced to decide the legal issue of whether one partner could bind the partnership. The BLM argues that compliance with its procedures demonstrates with certainty the signatory's authority to execute the application, thus assuring its legal validity. Unlike the date in *Conway* which we determined to be unessential, the requirement that the validity of the application be facially established is a substantive condition necessary to satisfy legitimate government interests. We conclude that this requirement is reasonably related to a matter within the scope of the agency's authority, and that the BLM acted reasonably in rejecting KVK for its failure to comply.

The judgment is affirmed.