**Robert Garcia START, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 85–7460.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 1986.

Decided Oct. 28, 1986.

Joel H. Golub, Antonio Bojorquez, San Francisco, Cal., for petitioner.

Susan Kamlet, Robert Kendall, Jr., Dept. of Justice, Washington, D.C., for respondent.

Before CHOY, Senior Circuit Judge, KENNEDY and REINHARDT, Circuit Judges.

CHOY, Senior Circuit Judge:

Robert Garcia Start petitions for review of a decision by the Board of Immigration Appeals (BIA) denying his request for discretionary relief from deportation under the amended section 241(f)(1) of the Immigration and Nationality Act of 1952 (INA), 8 U.S.C. § 1251(f)(1) (1982). We have jurisdiction under 8 U.S.C. § 1105a(a), and we deny the petition.

## I.

In 1979, Robert Start entered the United States as the unmarried son of a lawful permanent resident under section 203(a)(2) of the INA, 8 U.S.C. § 1153(a)(2) (1982). However, at the time of entry he was in fact married to Marylou M. Quimbo. Moreover, after admission into the United States, Start married Quimbo a second time, in order to enable her and their children to obtain an immigrant visa.

Deportation proceedings against Start commenced on October 28, 1982. Start was formally charged with entering the United States by fraud. Start had claimed that he was the unmarried son of a lawful permanent resident when in fact he was married to Quimbo, in violation of section 212(a)(19) of the INA, 8 U.S.C. § 1182(a)(19) (1982). He was also charged with entering without a valid labor certification or other valid entry document, in violation of sections 212(a)(14) and 212(a)(20), 8 U.S.C. § 1182(a)(14) & (a)(20), respectively.

At the hearing, Start requested that his deportation be waived pursuant to section 241(f)(1) of the INA, 8 U.S.C. § 1251(f)(1) (1982), in light of the fact that his father, mother, three brothers and two sisters are all either United States citizens or lawful permanent residents. Moreover, four days before his deportation hearing, Start was married to a United States citizen. After the hearing, a child was born to Start and his American wife.

Section 241(f)(1) affords the Attorney General discretion to waive the deportation of an alien who is the spouse or parent of a United States citizen, and was in the possession of an immigrant visa procured by fraud or misrepresentation.[1] Prior to 1981, waiver under section 241(f) was mandatory, if the alien had the requisite family connection to the United States, and the fraud for

---

1. Section 241(f)(1), 8 U.S.C. § 1251(f)(1), reads:
   (1)(A) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure or have procured visas or other documentation, or entry into the United States, by fraud or misrepresentation, whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in subsection (a)(19) of this section) who—
   (i) is the spouse, parent, or child of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and
   (ii) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such entry except for those grounds of inadmissibility specified under paragraphs (14), (20), and (21) of section 1182(a) of this title which were a direct result of that fraud or misrepresentation.
   (B) A waiver of deportation for fraud or misrepresentation
   granted under subparagraph (A) shall also operate to waive deportation based on the grounds of inadmissibility at entry described under subparagraph (A)(ii) directly resulting from such fraud or misrepresentation.

which the alien was charged was of the type forgivable by the provision. *See* 8 U.S.C. § 1251(f) (1976).

The immigration judge found Start deportable and denied waiver relief. The judge determined that Start's conduct, which included the "further" fraud of trying to procure an immigrant visa for his wife in the Philippines by marrying her a second time, warranted not invoking the forgiveness provision. The judge, however, characterizing Start's behavior as a "single lapse" of moral character, granted a request for voluntary departure.

Start appealed to the BIA, which affirmed the denial of the section 241(f)(1) waiver. The BIA based its decision on the adverse credibility finding regarding Start's contention of good faith, and the fact that Start "compounded [his fraud at entry] with a new instance of misrepresentation by participating in a second marriage ceremony, claiming it to be his first, and using it to attempt to immigrate his Filipino wife."

Start timely appeals the BIA's denial of the section 241(f)(1) waiver of deportation.

## II.

The narrow question on this appeal concerns the exercise of discretion not to grant a waiver from deportation under section 241(f)(1) of the INA, 8 U.S.C. § 1251(f)(1). Start does not contest the finding of deportability by the immigration judge and the BIA. Moreover, Start's eligibility for the waiver is not at issue. Both the immigration judge and the BIA explicitly concluded that Start met the requirements for relief under section 214(f)(1).

We review the BIA's decision not to invoke the forgiveness provision under the abuse of discretion standard. *Hernandez-Robledo v. INS*, 777 F.2d 536, 540 (9th Cir.1985). We note initially that the abuse of discretion standard leaves the BIA with much flexibility in exercising its judgment. *See id.* at 540–41 (affirming denial of section 241(f)(1) relief as "rational"); *Dallo v. INS*, 765 F.2d 581, 587 (6th Cir.1985) (noting "high level of discretionary authority" vested in Attorney General).

Start contends that because the waiver provision was intended to ensure that aliens would not be separated from family members lawfully in the United States, proof of substantial family connections in the United States was sufficient to compel the BIA to grant discretionary relief. We reject this argument.

In 1981, Congress amended section 241(f) to make the once mandatory waiver provision discretionary. *See* H.R.Rep. No. 264, 97th Cong., 1st Sess. 25, *reprinted in* 1981 U.S.Code Cong. & Admin.News 2577, 2593–94; *see also Hernandez-Robledo*, 777 F.2d at 540. The purpose of the amendment was neither to expand nor circumscribe the scope of the forgiveness provision. Rather, Congress was responding to the fact that "differing administrative and judicial interpretations have left the law in a state of confusion which makes it virtually impossible for the INS to uniformly administer section 241(f)." H.R.Rep. No. 264, 97th Cong., 1st Sess. 25, *reprinted in* 1981 U.S. Code Cong. & Admin.News 2577, 2594 (citation omitted). By clarifying the scope of the forgiveness provision and by making the waiver discretionary, Congress intended to "obviate the need for further litigation" and to "promote the uniform administration of this section." *Id.* To achieve these goals, this circuit has indicated that the BIA may refuse to exercise its discretion in favor of an alien who is statutorily eligible for relief and who would probably have qualified for the mandatory waiver of deportation prior to the recent amendment. *See Hernandez-Robledo*, 777 F.2d at 539–41. Thus, proof of family connections in the United States, while a necessary element in the determination of whether to grant waiver, is not solely dispositive of the issue. *See, e.g., id.* at 541 (finding BIA's denial of section 241(f)(1) waiver "rational" because deportation would not disrupt petitioner's primary family unit and because petitioner had been "recently convicted of a crime for which an alien can be excluded").

■ Start also argues that the BIA abused its discretion in finding that a second distinct instance of fraud justified denial of the waiver, when the immigration judge held that he had committed only one "single lapse" in moral character. He contends that because the instance of fraud for which an alien is charged should not be considered an adverse factor by the BIA, the "single lapse" for which he had been charged is insufficient to justify denial of the waiver.

The INS concedes that the underlying fraud for which Start is deportable should not constitute an adverse factor in determining whether to exercise discretionary waiver. *See Hernandez-Robledo,* 777 F.2d at 541 (discounting the fraud for which alien was charged). Nevertheless, the INS correctly argues that the BIA's denial of the waiver was justified on the basis of misrepresentations made by Start other than the fraud for which he was charged. These additional misrepresentations include: marrying his wife in the Philippines a second time in order to allow her and the children to immigrate into the United States, and possibly, marrying his wife for the sole purpose of getting her into the United States, i.e. with no intent to remain married.

Start argues that the immigration judge found that Start committed a single, continuous fraud, and that this finding should prevail as a matter of law over the BIA's conclusion that he committed multiple frauds. However, while the immigration judge characterized Start's behavior as a "single lapse of moral character," he did not conclude that Start committed a single fraud. Moreover, in light of the uncontested factual findings by both the BIA and the immigration judge concerning the scope of Start's fraudulent activities, we hold that the BIA did not abuse its discretion by concluding that Start committed multiple frauds.

Start additionally requests a remand to allow the BIA to consider his marriage to a United States citizen for over two years, and the fact that a child has been born to the couple since the initial deportation hearing. At the time of the initial deportation hearing, Start had been married to his present wife for only four days, a fact that the immigration judge did not consider in his favor. In affirming the denial of the section 241(f)(1) waiver, however, the BIA did consider the length of Start's marriage and the fact that he had had a child since the deportation hearing. After weighing this factor against adverse factors, the BIA concluded that denial of the waiver was appropriate. Because the BIA did consider these facts, no remand is necessary.

■ Finally, Start asks this court to re-evaluate the equities in this case, arguing that the BIA was in error in denying the favorable exercise of discretion. Other than the issue regarding his marriage to an American citizen and the birth of his child, Start does not contend that the BIA considered improper factors or ignored relevant equities in the exercise of discretion. This circuit has indicated that the BIA is required to consider all relevant evidence presented by the petitioner. *See, e.g., Mattis v. INS,* 774 F.2d 965, 968 (9th Cir.1985); *Zavala-Bonilla v. INS,* 730 F.2d 562, 568 (9th Cir.1984); *Ramirez-Gonzalez v. INS,* 695 F.2d 1208, 1211–12 (9th Cir.1983). It is clear that the BIA has fulfilled such an obligation in this particular case. It thoroughly examined Start's family situation, including the fact that a child was born to Start and his American wife during the pendency of his appeal. *See generally INS v. Errico,* 385 U.S. 214, 224, 87 S.Ct. 473, 479, 17 L.Ed.2d 318 (1966) (Congress' fundamental purpose in enacting section 241(f)(1) was to unite families); *Hernandez-Robledo,* 777 F.2d at 541 (same). It noted that Start provides financial assistance for his parents, that he is a college graduate, and that he is employed and financially secure. Despite the proper consideration of all the relevant equities raised by Start, the BIA found these positive equities outweighed by the adverse factor of Start's multiple fraudulent activity.

In light of the serious consideration given by the BIA to the relevant facts raised

by Start, we will not substitute our view of the equities for the conclusion drawn by the BIA denying discretionary waiver of deportation. *See id.; cf. Hyun Joon Chung v. INS*, 720 F.2d 1471, 1475 (9th Cir.1983) (court may not substitute its judgment for decision by the INS to deny discretionary suspension of deportation under section 244(a)(2) of the INA, 8 U.S.C. § 1254(a)(2), absent an abuse of discretion), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2659, 81 L.Ed.2d 366 (1984).

The petition for review of the BIA decision is DENIED.

REINHARDT, Circuit Judge, dissenting:

The majority affirms the decision of the Board of Immigration Appeals deporting Robert Garcia Start from the United States on the ground that he attempted through artifice to bring his wife and children into this country to join him and the rest of his immediate family. Based upon this grave misdeed, Start, a law-abiding person and a design engineer for the B–1 bomber, is being deported. Although Courts of Appeal do not have the authority to substitute their judgment for that of the BIA, we do have the responsibility of ensuring that the BIA considers all appropriate factors. Because this court fails to fulfill that responsibility, I dissent.

Start sought relief from deportation under 8 U.S.C. § 1251(f). The "original intent of the section was simply to waive relatively minor grounds for deportation—those arising out of misrepresentations in arranging entry—for aliens with a close family relative who was a United States citizen or

1. It should also be noted that Start is currently married to an American citizen and is the father of an American child born to her.

2. Contrary to the majority's assertion that the "purpose of the amendment was neither to expand nor circumscribe the scope of the forgiveness provision", *ante* at 541, the amendment made relief available both for innocent and fraudulent misrepresentations and for aliens charged with deportability based on violation of § 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14). While the former may arguably be said to be merely a clarification, the latter is clearly an expansion.

lawful permanent resident." House Report to the Immigration and Nationality Act Amendments of 1981, H.Rep. No. 264, 97th Cong., 1st Sess. 25 (1981), *reprinted in* 1981 U.S.Code, Cong. & Ad.News 2577, 2594. The section was specifically designed to apply to the type of deception engaged in by Start—and at issue here. It was also specifically designed to apply to persons like Start whose immediate family, including his father, mother, three brothers, and two sisters are all United States citizens or permanent residents.[1]

This section was amended by Pub.L. No. 97–116, effective December 29, 1981, which modified the previously mandatory waiver of deportability for violation of 8 U.S.C. §§ 1251(a)(1) and 1182(a)(19) (visa fraud or misrepresentation) and expanded its scope. The amendment gave the BIA discretionary authority over the broadened subject matter. The purpose of the amendment was two-fold: one, to expand the classes of people for whom the waiver of deportability was available;[2] and two, to enable the BIA to settle troublesome legal questions regarding eligibility in an equitable manner.

Prior to the recent amendment, Start would have had an absolute right to remain in this country.[3] The intent of Congress in amending the section was not to enable the BIA to deport an individual, like Start, who clearly qualified for relief. Rather, the purpose of the amendment was to alter agency authority at the margins by permitting the BIA to exercise its discretion in cases in which the courts previously were

3. The language of the former provision stated:
   The provisions of this section relating to the deportation of aliens ... on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas ..., or entry ... by fraud or misrepresentation *shall not apply* to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or ... permanent residen[t].
   8 U.S.C. § 1251(f) (1970) (emphasis added).

required to make fine distinctions.[4] Here, however, the BIA used its new-found discretion to cut back on rights clearly afforded to Start by the unamended statute, a result certainly not contemplated by Congress.

There is a serious question as to whether this agency action could be sustained because it is so manifestly contrary to the intent of the Congress. Courts overturn an agency action when that action "rests upon a policy judgment that is so unacceptable as to render the action arbitrary." *A Restatement of Scope-of-Review Doctrine,* 35 Ad.L.Rev. 235, 235 (1986) (§ (b)(3)) (prepared by Section of Administrative Law of the ABA). *See also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971) (in determining arbitrariness, a court must ask "whether there has been a clear error of judgment."); *Dugan v. Ramsay,* 727 F.2d 192, 196 (1st Cir.1984) (Breyer, J.) ("[W]e believe that the agency interpretation here at issue is so totally unreasonable as to be without support in the authorizing statute."); *Conway v. Watt,* 717 F.2d 512, 513 (10th Cir. 1983) (agency action "would not be valid if shown to bear no reasonable relation to congressional intentions (as expressed in the Act at issue or in legislative history) ..."). *Cf. INS v. Rios-Pineda,* 471 U.S. 444, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985) (when the BIA exercises discretionary authority it must ground its decision in "legitimate concerns about the administration of the immigration laws"). Any concern expressed by the BIA that is wholly contrary to the intent of Congress cannot be considered to be either legitimate or acceptable.

The majority upholds the BIA's decision on the ground that the BIA "properly"

divided Start's single misrepresentation into a number of smaller ones, *viz.* "marrying his wife in the Philippines a second time to allow her and the children to immigrate into the United States, and possibly, marrying his wife for the sole purpose of getting her into the United States." *Ante* at 542. The IJ considered Start's action a *"single lapse of moral character."* The reliance by the BIA on artificially segmented components of Start's "single lapse" may well have been inappropriate, and its decision may be reversible on that ground as well. *See, e.g., Siang Ken Wang v. INS,* 413 F.2d 286, 287 (9th Cir.1969) (consideration of irrelevant factor is an abuse of discretion). However, even assuming that the BIA's discretion extends to Start and that Start's action was not effectively one act—a formalistic division at best—reversal is required because the BIA failed to consider the equities in Start's favor.

Our obligation as a reviewing court is to set aside agency action when the "agency has relied on factors that may not be taken into account under, or has ignored factors that must be taken into account under, any [governing] source[ ] of law." *Restatement of Scope-of-Review Doctrine,* 35 Ad. L.Rev. at 235 (§ (b)(2)). As we noted in *Mattis v. INS,* 774 F.2d 965 (9th Cir.1985), "[w]e have consistently required the BIA to state its reasons and show proper consideration of all factors when weighing equities and denying relief." *Id.* at 968. We reverse actions of the BIA under section 1251(f) when the Board has abused its discretion. *Hernandez-Robledo v. INS,* 777 F.2d 536, 540 (9th Cir.1985). Here, the BIA has clearly done so.

Under section 1251(f), the BIA must consider "the reasons that an alien should be allowed to stay, despite the illegality" of

---

**4.** The House Report to the Immigration and Nationality Act Amendments of 1981, H.Rep. No. 264, 97th Cong., 1st Sess. 25 (1981), *reprinted in* 1981 U.S.Code, Cong. & Ad.News 2577 states:

[T]he scope of the waiver and the meaning of "otherwise admissible" have become increasingly unclear. [The Amendment] clarifies that the waiver is only intended to ap-

ply to immigrants and that it is available for innocent (as well as fraudulent) misrepresentations. By doing this and making the waiver discretionary, it should obviate the need for further litigation, and promote the uniform administration of this section.

*Id.* at 2594.

his entry. *Hernandez-Robledo,* 777 F.2d at 541. We there noted at least two reasons militating for the exercise of administrative discretion in the alien's favor: length of stay and stable employment record. *Id.* Here, the government admitted at oral argument that it was required to consider all of the factors set forth in the decision issued by the BIA in this case. Those factors include not only hardship to family, but also stable employment history, evidence of value and service to the community, rehabilitation if a criminal record exists (and a finding of whether a criminal record exists), and good character. While the BIA certainly has discretion in assigning the relative weight to the factors it need consider, *cf. INS v. Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (Attorney General has the authority to determine what constitutes "extreme hardship" narrowly), the agency has no authority to refuse to consider relevant factors or to fail to accord the application individualized treatment.

The BIA failed to consider some of the very factors that its own decision in this case states it must. We need look no further than the face of the BIA decision to observe its internal inconsistencies and the patent error committed by the Board.

To begin with, the BIA did not fully discuss Start's family ties and family relationships. As to employment, it merely stated that Start was employed as a design engineer and earned $33,000 a year. An acknowledgement of current employment by the BIA does not constitute full or adequate consideration of "stable employment history." Although the record before the Immigration Judge reflects the fact that the petitioner was employed for approximately five years, the BIA did not consider that factor sufficiently important to mention as an equity in Start's favor. Nor is there any mention by the BIA of Start's value or service to the community, although he has worked for some time in our national defense effort. Moreover, the BIA makes no mention of the fact that Start has never been arrested for, let alone convicted of, any crime (unlike the petition-

er in *Hernandez-Robledo* ) or the fact that Start is of "good moral character," as the IJ found him to be. In all these respects, the BIA decision violates, beyond any doubt, the rule set forth in *Mattis.* 774 F.2d at 968.

The BIA appears to have abused its newfound discretion under 8 U.S.C. § 1251(f)(1) in a number of ways. Its decision is contrary to the intent of Congress in amending the statute and thus is neither acceptable nor legitimate. The BIA's segmentation and reliance on aspects of Start's visa fraud was improper. Finally, the BIA failed to consider a number of the requisite factors in denying relief under the amended section in violation of *Mattis.* The BIA's action is both unreasoned and arbitrary. It should be reversed.