Hector NUNEZ–PAYAN, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 86–4513
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 9, 1987.
Rehearing Denied April 29, 1987.

Susan M. Urbieta, El Paso, Tex., for petitioner.

Robert L. Bombough, Civ.Div., Madelyn E. Johnson, Atty., Allen W. Hausman, Assit. Dir., Jane A. Williams, Atty., Washington, D.C., for respondent.

David H. Lambert, Dist. Director, I.N.S., New Orleans, La., A.H. Giugni, Dist. Director, I.N.S., El Paso, Tex., for other interested parties.

Before RUBIN, RANDALL and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Hector Nunez-Payan appeals from the Board of Immigration Appeals' denial of his petition for suspension of deportation or, in the alternative, voluntary departure. Nunez-Payan claims that the Board of Immigration Appeals incorrectly found that he was precluded from proving good moral character because of a past narcotics arrest and guilty plea, that he could not prove seven years continuous presence in the United States as a result of several visits to Mexico, and that he failed to establish extreme hardship as a result of his deportation. We affirm.

I

Nunez-Payan, a thirty-one year old native and citizen of Mexico, is married to a naturalized citizen[1] of the United States and is the father of two United States citizen children. His mother and twelve siblings are natives and citizens of Mexico. All but his mother and two siblings reside in Mexico.

Nunez-Payan has resided in the United States since November 1975, but has visited his family two or three times in Mexico. After each visit, Nunez-Payan reentered this country by fraudulent claims of United States citizenship. The last entry occurred on September 9, 1981, immediately after which an officer at a traffic checkpoint detected the odor of marijuana in Nunez-Payan's automobile. A search revealed one pound of marijuana. Upon his arrest, Nunez-Payan pled guilty to the narcotics charge and received a probated sentence of thirty-two months under Texas' deferred adjudication statute. *See* Tex.Code Crim. Proc.Ann. art. 42.12, § 3 (Vernon 1987).

A records search revealed that Nunez-Payan was not a United States citizen and was without lawful status. Pursuant to 8 U.S.C. § 1251(a)(2), a Show Cause Order issued alleging that he was deportable for having entered the United States without presenting himself for inspection by officials of the Immigration and Naturalization Service. At his initial deportation hearing on September 26, 1983, Nunez-Payan conceded deportability and was granted until November 28, 1983, to apply for relief from deportation. The Immigration Judge also granted Nunez-Payan voluntary departure through December 28, 1983.

---

1. At the time of the hearing before the Board of Immigration Appeals, Rita Yolanda Nunez was a lawful permanent resident who testified that she had applied for naturalization, although she could not produce proof of filing. In his appellate brief, Nunez-Payan claims that his wife has since been naturalized. For the purpose of this opinion, we will assume Nunez-Payan is correct.

Upon the recommendation of his probation officer, a state district court terminated his probation on January 28, 1985. On the same date, Nunez-Payan again conceded deportability in a second deportation hearing, but submitted an application for suspension of deportation, supported by exhibits and the testimony of Nunez-Payan, his wife, their two children, and his probation officer. The Immigration Judge denied his application and also declined to grant Nunez-Payan voluntary departure, concluding that Nunez-Payan failed to establish even one of the statutory bases for suspension—seven years continuous presence in the United States, good moral character, and extreme hardship. The Board of Immigration Appeals affirmed this decision. Nunez-Payan appeals.

## II

■ To qualify for discretionary suspension of deportation under 8 U.S.C. § 1254(a)(1), Nunez-Payan must show: (1) that he has been physically present in the United States for a continuous period of not less than seven years immediately preceding his application for relief, (2) that during this period, he has been a person of good moral character, and (3) that "in the opinion of the Attorney General," his deportation would result in "extreme hardship" to himself or to his spouse, parent, or child who is either a citizen or a lawful permanent resident of the United States. *See Luciano-Vincente v. INS,* 786 F.2d 706, 708 (5th Cir.1986). The Immigration Judge found that Nunez-Payan had failed to establish even one of these statutory requirements. Because we agree that Nunez-Payan's previous arrest and probation for transporting marijuana precluded him from proving good moral character, we affirm.[2]

Section 1182(a) of Title 8 provides that an alien shall be excluded from admission into the United States if he has been convicted of possession of or of traffic in narcotic drugs or marijuana, or an immigration officer *knows or has reason to believe* he is or has been an illicit trafficker in any narcotic drugs or marijuana. 8 U.S.C. § 1182(a)(23). Section 1101(f)(2) provides that no alien who is a member of the class described in § 1182(a)(23) shall be regarded as, or found to be, a person of good moral character. The Immigration Judge, by reason of Nunez-Payan's probated sentence for transporting marijuana, reasonably believed him to be a member of this precluded class.

While noting the incident was not deemed a conviction under Texas law, the Immigration Judge held that the "probation remains a fact of record and constitutes 'trafficking' within the meaning of Sections 212(a)(23) and 101(f) of the I & N Act." We are persuaded that the Immigration Judge was correct. Nunez-Payan pled guilty to the narcotics offense when prosecuted; this plea can be considered an admission of the commission of this crime by the Immigration Judge.

Nunez-Payan argues that since the sentence of probation under the Texas Deferred Adjudication Statute, Tex.Code Crim.Proc.Ann. art. 42.12, § 3d (Vernon 1987), is not a conviction for purposes of Texas law, then it should not be considered to preclude his showing of good moral character. Nunez-Payan argues by analogy to *Matter of Winter,* 12 I & N 638 (BIA 1967), in which the Board of Immigration Appeals ruled that an alien's plea of guilty to larceny was not tantamount to an admission for immigration purposes where there was no final adjudication of guilt or conviction under Massachusetts law, and to *Matter of H,* 7 I & N 249 (BIA 1956), which applied similar reasoning to a pardoned larceny conviction.

Unfortunately for Nunez-Payan, Congress distinguished between crimes involv-

---

**2.** The failure to prove good moral character precludes Nunez-Payan from receiving discretionary relief, such as suspension of deportation or voluntary departure. We therefore need not address the Immigration Judge's findings that Nunez-Payan had not been present in this country for seven continuous years and that he could not prove extreme hardship as a result of his deportation.

ing moral turpitude and narcotics violations, thereby rendering his citations unhelpful. Section 1251(b) of Title 8 provides that aliens convicted of crimes involving moral turpitude who have been pardoned or who have received from the sentencing court recommendations against deportation shall not be deported pursuant to § 1251(a). However, Congress expressly provided that these exceptions—pardons and judicial recommendations against deportation—shall not be provided to aliens convicted of narcotics offenses. 8 U.S.C. § 1251(b).

Moreover, the provision in § 1182(a)(23) respecting exclusion based upon an immigration officer's reasonable belief that an alien has been a drug trafficker is distinct from that part of § 1182(a)(23) requiring a conviction. In *Matter of Favela*, 16 I & N 753 (BIA 1979), the Board of Immigration Appeals found that the applicant, a conscious smuggler of a kilogram of marijuana into the United States, was a trafficker within the meaning of § 1182(a)(23) even though the applicant's conviction was subject to possible expungement under the Federal Youth Corrections Act, 18 U.S.C. § 5021(b). The Board concluded that he was properly excluded because the immigration officer had reason to believe that he was an illicit trafficker in narcotics. The Board found that the policy underlying expungement was not violated by consideration of the underlying conduct. "Even where a criminal complaint has been subsequently dismissed, an alien could be excluded under section 212(a)(23) of the Act as a trafficker." *Id.* at 756.

Nunez-Payan next argues that even if the admission can be considered, he was not guilty of trafficking within the meaning of § 1182(a)(23), because he possessed only one pound of marijuana, because he did not possess the drugs for the purposes of resale and profit, and because there was no evidence that he had ever attempted to transport marijuana before or after this incident. The Board has ruled that an alien who knowingly and consciously acts as a conduit in the transfer of marijuana between a dealer and customers of the dealer is excludable under section 212(a)(23) of the Immigration and Nationality Act as an "illicit trafficker" in narcotic drugs, even though he derives no personal gain or profit from the transaction. *Matter of R— H—*, 7 I & N 675 (BIA 1958). Also, in *Favela*, the Board found a kilogram to be sufficient to find the applicant a trafficker, even though it was his single attempt to smuggle marijuana into the United States. 16 I & N at 755. Thus, we are persuaded that the Immigration Judge had reason to believe that Nunez-Payan was a trafficker of marijuana, and that Nunez-Payan was therefore precluded from establishing good moral character.[3] Contrary to Nunez-Payan's assertion, the Immigration Judge did not have to consider the positive evidence of good moral character produced by him at his hearing because Nunez-Payan was precluded by statute from proving good moral character.

## III

Although Nunez-Payan did not make a formal application for voluntary departure, the Immigration Judge considered whether he would be eligible for such discretionary relief. In order to be entitled to this relief, Nunez-Payan must establish that "he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure." 8 U.S.C. § 1254(e). Because Nunez-Payan was guilty of at least one fraudulent claim of United States citizenship and involvement in the transportation of marijuana within the statutory period, the Immigration Judge found that Nunez-Payan could not establish good moral character. Nunez-Payan attacks this finding, reiterating his previous challenge to the preclusive effect of the narcotics arrest and probation and

---

**3.** The Immigration Judge also found Nunez-Payan's claims of false citizenship to be evidence of bad moral character. Similar evidence has been found to be sufficient to deny discretionary relief. *See Wong Wing Hang v. I.N.S.*, 360 F.2d 715 (2d Cir.1966); *Orlando v. Robinson*, 262 F.2d 850 (7th Cir.1959).

complaining that the Immigration Judge disregarded the stipulation as to voluntary departure entered at the original deportation hearing.

Because the Immigration Judge had reason to believe that Nunez-Payan was a trafficker within the meaning of § 1182(a)(23), we are persuaded that the judge correctly ruled that Nunez-Payan was not entitled to voluntary departure. Also, contrary to Nunez-Payan's contentions, the stipulation entered into at his original deportation hearing was not binding on the Immigration Judge, since it granted him voluntary departure through December 28, 1983, only. Furthermore, this grant of voluntary departure, occurring by stipulation, was rendered before the Immigration Judge had heard the evidence of Nunez-Payan's prior conduct. We find that Nunez-Payan was not entitled to voluntary departure.

### IV

 Finally, Nunez-Payan asks us to remand this case so that he may apply for legalization pursuant to the Reform Act. Under the Reform Act, legalization is a nondiscretionary adjustment of status for any alien who shows, among other things, that he:

1. Entered the United States before January 1, 1982;
2. Has continuously resided in the United States "in an unlawful status" since January 1, 1982;
3. Shows that he has been continuously physically present since enactment;
4. Is an otherwise "admissible" alien, as it relates to statutory exclusion grounds; and
5. Timely files an application for legalization.

Pub.L. No. 99–603, § 201 (1986). The administrative and judicial review provisions applicable to legalization require the Attorney General to establish regulations by which such claims will be processed. As of yet, the Attorney General has not designated the proper entity to adjudicate legalization applications. Thus, we could not remand this case if we so desired. The only relief available to Nunez-Payan would be a stay of this proceeding.

However, because Congress has provided that the Attorney General may not waive narcotics offenses when evaluating legalization claims, except for single offenses relating to simple possession of thirty grams or less of marijuana, we are persuaded that Nunez-Payan would not be eligible for legalization in any event. His offense constituted transportation of one pound of marijuana, considerably more than the statutory exception of thirty grams. We therefore decline to stay these proceedings.

### V

The judgment of the Board of Immigration Appeals is AFFIRMED.