**Jesus Paras LIWANAG, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

No. 88–4489.

United States Court of Appeals,
Fifth Circuit.

May 15, 1989.
Rehearing and Rehearing En Banc
Denied June 28, 1989.

Eugenio Cazorla, Dallas, Tex., for petitioner.

Edwin Meese, III, Atty. Gen., Charles E. Pazar, Jill E. Zengler, Robert L. Bombough, David J. Kline, Alice M. Smith, Robert Kendall, Jr., Civ. Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Ronald Chandler, Deputy Director, Dallas, Tex., John B.Z. Caplinger, Deputy Director, I.N.S., New Orleans, La., for other interested parties.

Before REAVLEY, WILLIAMS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

## FACTS

Jesus Paras Liwanag appeals the decision of the Board of Immigration Appeals (BIA) denying the withholding of deportation under 8 U.S.C. § 1251(f)(1) and denying voluntary departure under 8 U.S.C. § 1254(e). For the reasons set forth below, we AFFIRM.

In April 1980 Petitioner Liwanag, a Filipino, entered the United States claiming to be an unmarried son of a lawful permanent resident under § 203(a)(2) of the Immigration and Naturalization Act (INA), 8 U.S.C. A. § 1153(a)(2) (1988).[1] Liwanag was accordingly admitted as a second preference immigrant. At the time of his entry, however, Liwanag was actually married to Lucilia M. Canilao. After spending approximately two years in the United States, Liwanag returned to the Philippines in January 1982 and married Canilao a second time to obtain immigrant visas for both his wife and children.

Liwanag filed for divorce from Canilao just two months later in March 1982. While still legally married to Canilao, Liwanag subsequently fathered a son with Helen Plorgo, with whom he had been living since October 1983. This child was born in Dallas, Texas on October 13, 1984.

Liwanag was investigated by the Immigration and Naturalization Service (INS) in November 1984. Under oath, Liwanag gave false testimony regarding his marriage(s) to Canilao, concealing the fact that he was married at the time of his original entry into the United States. At his deportation hearing in early 1985, Liwanag conceded deportability and applied for relief under § 241(f)(1) of the INA, 8 U.S.C. § 1251(f)(1) (1982). Alternatively, Liwanag requested that he be allowed voluntary departure under 8 U.S.C. § 1254(e) (1982). The IJ denied relief, denied voluntary departure, and ordered Liwanag deported. Petitioner appealed to the BIA. Before the

---

1. 8 U.S.C.A. § 1153(a)(2) allows the issuance of immigrant visas to qualified persons who are "the spouses, unmarried sons or unmarried daughters" of aliens lawfully admitted for permanent residence.

Board considered his case, Liwanag married Helen Plogro, thereby legitimating their child born in the United States. The BIA determined that Petitioner was statutorily eligible for the relief of waiver of deportation. The Board then had discretion to grant such a waiver. It considered the factors favorable to Petitioner: deportation would separate him from his (new) wife and citizen son; his claim to be a good provider; absence of a criminal record and good character references. It then weighed the opposing factors: misrepresenting his marital status to obtain an immigrant visa in 1980; participating in a second, fraudulent marriage ceremony and attempting to use that fraudulent marriage to bring his first wife and family into the United States. The BIA affirmed Liwanag's deportation.

## ANALYSIS

■ In examining the decision by the BIA, we consider whether the Board abused its discretion and thereby acted arbitrarily or capriciously. *Jarecha v. I.N.S.*, 417 F.2d 220, 224 (5th Cir.1969).

### I.

Petitioner first asserts that the BIA should not have included his original fraudulent act of misrepresenting his marital status at the time of entry in balancing the favorable against the unfavorable factors present in his case. In arguing the inappropriateness of this methodology, Liwanag correctly notes that 8 U.S.C. § 1254(a)(2) presupposes that the petitioner has committed an act justifying deportation. In its brief, the INS concedes that the original fraudulent act should not be

considered as an adverse factor in the balancing equation. Since the INS has conceded this point, we need not address the issue further. *Cf. Start v. I.N.S.*, 803 F.2d 539, 542 (9th Cir.1986), withdrawn, 862 F.2d 787 (9th Cir.1988) (INS conceding same point in similar circumstances).

### II.

■ Despite the erroneous weighing of Liwanag's original fraudulent act, the INS argues—and we agree—that the BIA's denial of the waiver of deportability was nonetheless proper because of additional misrepresentations wrought by Liwanag.[2]

Petitioner responds to this argument by claiming that the Board improperly "split" his fraudulent act of misrepresenting his marital status into several discrete acts. In essence, Liwanag contends that his fraudulent second marriage to Canilao for purposes of bringing her and their children to the United States; his filing of a petition for an immigrant visa on her behalf; and his lying to the INS officer regarding his marriage to Canilao must all be considered as part of his original misdeed. We cannot agree with this characterization of his behavior. Despite his contention, Petitioner's subsequent fraudulent actions were unnecessary to perpetuate his original act of misrepresenting his true marital status to obtain an immigrant visa. Liwanag committed one fraudulent act by gaining entry into the United States for himself. He committed a separate fraud in attempting to bring his wife into the United States through a second, sham marriage.

Liwanag's argument raises a question of first impression in our Circuit, but one already addressed by the Ninth Circuit in a

**2.** The dissent suggests that we ought to remand for reconsideration by the INS. We disagree. When an administrative agency has relied on one or more improper or irrelevant factors in reaching its determination, our court will exercise discretion as to whether a remand to the agency is appropriate. *Sierra–Reyes v. Immigration & Naturalization Ser.*, 585 F.2d 762 (5th Cir.1978). Accord *Diaz v. U.S. Postal Service*, 853 F.2d 5 (1st Cir.1988); *Salt River Project Agr. Imp. v. United States*, 762 F.2d 1053 (D.C.Cir. 1985); *So Chun Chung v. U.S. Immigration and Nat.*, 602 F.2d 608 (3d Cir.1979). The additional

misrepresentations, which were proper factors for consideration, are substantially similar in character to Liwanag's original fraudulent act. Therefore, there is little likelihood that the agency would have reached a different conclusion but for this error. *See e.g., Salt River Project,* 762 F.2d at 1060 n. 8 ("When an agency relies on a number of findings, one or more which are erroneous, we must reverse and remand only when there is a significant chance that but for the errors the agency might have reached a different result.").

strikingly similar case. *Start v. I.N.S.*, 803 F.2d 539 (9th Cir.1986), withdrawn, 862 F.2d 787 (9th Cir.1988) (subsequent events rendered original appeal moot). There, the court found that Start's second, sham marriage performed to allow his first wife and their children to immigrate into the United States constituted a second misrepresentation which could be weighed against his request for a waiver of deportation. Like Liwanag, Start fraudulently entered the United States under the pretense of being an unmarried son of a lawful permanent resident, when, in fact, he was married. We find *Start* persuasive.

█ In rendering this decision, we are mindful that Congress's primary objective in enacting § 241(f)(1) was to unite families. *See generally, INS v. Errico,* 385 U.S. 214, 224–25, 87 S.Ct. 473, 480, 17 L.Ed. 2d 318, 326 (1966) (Congress's "fundamental purpose" in adopting this legislation was to unite families comprised, in part, of American citizens or lawful permanent residents, thereby achieving a "humanitarian result"). The relevant family in this case now consists of Liwanag, Plorgo, a lawful permanent resident, and their son, a United States citizen. Despite the humanitarian concerns underlying § 241(f), Congress has entrusted the BIA to perform a balancing operation. Although proof of United States family connections is a "necessary element in the determination of whether to grant waiver," it "is not solely dispositive of the issue." *Start,* 803 F.2d at 541. The record shows that the BIA thoughtfully considered the objective underlying § 241(f)(1). Our review is limited to correcting abuses of discretion. There may be instances in which several misrepresentations would constitute a single, indivisible fraud, but in this case we cannot say that the BIA abused its discretion in considering Liwanag's several misrepresentations as separate acts in the balancing process for withholding deportation.

## III.

█ Liwanag alternatively contests the BIA decision to refuse voluntary departure. Under 8 U.S.C. § 1254(e), the INS, in its discretion, may grant an alien permission to depart voluntarily if "such alien shall establish ... that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure." Section 1101(f)(6) of title 8 provides that no person shall be found to be a person of good moral character who, during the time for which good moral character is required to be established, is, or was "one who has given false testimony for the purpose of obtaining any benefits under this chapter." The BIA concluded that Liwanag's November 1984 misrepresentation of his marital status, under oath, was false testimony included within § 1101(f)(6), as a result of which he became statutorily ineligible for voluntary departure. Although the Board's interpretation of governing immigration law is subject to de novo review, our circuit accords deference to the BIA's interpretation unless there are compelling indications that it is wrong. *Campos–Guardado v. I.N.S.,* 809 F.2d 285, 289 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987).

In challenging the Board's denial of his request for voluntary departure, Liwanag contends that the false testimony given to the INS officer in 1984 should not have been segregated from his original fraudulent act (i.e., lying about his marital status to obtain his initial visa) because it was done in furtherance, or to preserve, his original fraud.[3] This argument essentially recapitulates the "one fraud" contention by which Liwanag sought to achieve a withholding of deportation. We find it even

---

**3.** The INS contends that this issue has already been decided by *Nunez–Payan v. I.N.S.,* 811 F.2d 264, 267 (5th Cir.1987). The INS claims that *Nunez–Payan* allows the BIA, in applying § 1254(e), to consider the act which precludes a finding of good moral character (in that case, transportation of marijuana), even though that act constitutes the basis for the original deportation charge. We disagree with the INS's characterization of *Nunez–Payan.* In that case the original deportation was apparently based on the alien's "having entered the United States without presenting himself for inspection by [INS] officials." 811 F.2d at 265.

less persuasive for purposes of the good moral character provision because his perjury falls within the literal terms of that statute. Section 1101(f)(6) denominates, rather narrowly, "a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." *Kungys v. U.S.*, 485 U.S. 759, 108 S.Ct. 1537, 1551, 99 L.Ed.2d 839 (1988). The court in *Kungys* articulated both the limitations on § 1101(f)(6) and the basis for its literal interpretation. Liwanag's argument, which would hold some false testimony in effect excluded from the statute, flies in the face of its literal meaning.

■ Liwanag alternatively seeks to turn the "plain language" rule to his benefit by contending that his false testimony was delivered not to "obtain" immigration benefits, as the statute reads, but rather to "retain" his permanent resident status when it was challenged by an INS investigation. This is a semantic distinction without a difference. Liwanag's argument implicitly assumes that permanent resident status, once conferred, is a "benefit" from the immigration laws to which the statute solely speaks. We disagree. Permanent resident status is revocable, for instance, if procured by fraud, *e.g., Bachelier v. Immigration & Naturalization Service*, 625 F.2d 902 (9th Cir.1980), and a permanent resident consequently "obtains" a "benefit" if he successfully withstands an investigation of his status. We see no reason why testifying falsely under oath to protect one's status under the immigration laws is any less encompassed by § 1101(f)(6) than testifying falsely under oath to obtain that status originally.[4] Further, we cannot perceive why Congress would have chosen to distinguish between such incidents of false testimony when writing the statute.

The result urged by Liwanag would be inconsistent with cases decided in two other circuits.

In *Bufalino v. Holland*, 277 F.2d 270 (3rd Cir.1960), *cert. denied*, 364 U.S. 863, 81 S.Ct. 103, 5 L.Ed.2d 85 (1960), the petitioner was found to have given false testimony when, in the course of deportation hearings, he purposely provided inaccurate information on his preexamination application. The Special Inquiry Officer also found that Bufalino had presented false testimony with regard to his birth place, birth date, and absences from the United States. According to the Third Circuit, "having determined that the appellant testified falsely in these proceedings *in order to avoid deportation* the Special Inquiry Officer was required by [§ 110(f)(6)] to find the appellant was not a person of good moral character." (emphasis added).

More recently, the Ninth Circuit upheld an immigration judge who found the petitioner precluded from establishing good moral character under § 1101(f)(6) because of false testimony which Bachelier had given when his permanent resident status was rescinded. *Bachelier v. Immigration & Naturalization Serv.*, 625 F.2d 902 (9th Cir.1980). Like petitioner Liwanag, Bachelier had already been granted permanent resident status when the INS began its investigation. Thus, like Liwanag, Bachelier must have been lying to protect his permanent resident status.

We find additional inferential support for the BIA's decision in *Kungys, supra*, where the Court noted:

It is only dishonesty accompanied by this precise intent [of obtaining immigration benefits] that Congress found morally unacceptable. Willful misrepresentations made for other reasons, such as embarrassment, fear, or a desire for privacy, were not deemed sufficiently culpable to brand the applicant as someone who lacks good moral character.

108 S.Ct. at 1551 (quoting with approval from the Government's brief).[5]

---

4. By clever semantics, a petitioner could transform many INS proceedings into those for which benefits were "retained" rather than "obtained."

5. Liwanag seeks in passing to characterize his lie as an act done out of fear. This misstates the record, in which Liwanag acknowledged that he lied to protect his permanent resident status. Fear of losing such a status may always

Inasmuch as *Kungys* sought to draw a clear distinction between willful misrepresentations made to obtain immigration benefits, on one hand, and misrepresentations made for other reasons, it would be inconsistent to splice the statute again into categories of "benefits" bestowed by the immigration laws themselves.

## IV.

In sum, the BIA erroneously included the petitioner's original fraud in its balancing test under 8 U.S.C. § 1251(f)(1). Nevertheless, the BIA could properly deny Liwanag's request for a waiver of deportation because of his additional misrepresentations. The BIA also properly found Liwanag to be a person lacking good moral character under the provisions of § 1101(f)(6), consequently, he was ineligible for voluntary departure. Therefore, the order of the Immigration and Naturalization Service is AFFIRMED.

REAVLEY, Circuit Judge, dissenting:

As the majority correctly noted, the facts in this case are virtually identical to those in the Ninth Circuit case of *Start v. Immigration and Naturalization Serv.*, 803 F.2d 539 (9th Cir.1986), *withdrawn*, 862 F.2d 787 (9th Cir.1988), and the majority follows the approach of *Start* exactly. I am inclined to agree with Judge Reinhardt's dissent that the BIA's application of 8 U.S.C. § 1251(f), approved by the Ninth Circuit in *Start*, and now receiving the sanction of this court, "is contrary to the intent of Congress in amending the statute and thus is neither acceptable nor legitimate." 803 F.2d at 545 (Reinhardt, J., dissenting). I need not reurge Judge Reinhardt's argument,[1] however, because this court has committed a much more fundamental error in reviewing the Attorney General's exercise of discretion.

Let me recapitulate the basis of the administrative decision in this case. After determining that the petitioner was statutorily eligible for the waiver, the BIA proceeded to balance "the alien's undesirability as a permanent resident with the social and humane considerations present to determine whether according him such relief

---

be involved in the false testimony covered by § 1101(f)(6), but that is obviously not the "fear" referred to in *Kungys*.

1. The court in *Start*, 803 F.2d at 542, as did the majority in this case, affirmed the BIA decision that the petitioner was not entitled to the discretionary waiver because "he attempted through artifice to bring his wife and children into this country to join him and the rest of his immediate family." *Id.* at 543 (Reinhardt, J., dissenting). The purpose of the § 1251(f) waiver is to unite families. "Congress felt that, in many circumstances, it was more important to unite families and preserve family ties than it was to enforce strictly the quota limitations or even many restrictive sections that are designed to keep undesirable or harmful aliens out of the country." *Immigration and Naturalization Serv. v. Errico*, 385 U.S. 214, 220, 87 S.Ct. 473, 478, 17 L.Ed.2d 318 (1966). Congress determined that "[t]he facts that the alien could not honestly gain entry ... and had lied about it, were ... more than counterbalanced by familial relationships." *Cacho v. Immigration and Naturalization Serv.*, 547 F.2d 1057, 1061 (9th Cir.1976). The Supreme Court has noted that the waiver was designed to accomplish a humanitarian result and that courts must "give meaning to the statute in light of its humanitarian purpose of preventing the breaking up of families." *Errico*, 385 U.S. at 225, 87 S.Ct. at 480. Indeed, this court has held that § 1251(f) "is a benevolent

statute. Mercy and compassion are inherent in its ameliorative functions; and we are convinced that Congress did not intend for the courts to be niggardly in their interpretation of its language." *Gonzalez de Moreno v. Immigration and Naturalization Serv.*, 492 F.2d 532, 538 (5th Cir.1974). The waiver was originally mandatory but problems in administering it prompted Congress to amend the statute in 1981 to give the Attorney General discretion in applying the waiver. The legislative history of the amendments makes clear that it was not the intent of Congress to limit the availability of the waiver. *See* H.R.Rep. No. 264, 97th Cong., 1st Sess. at 24–25, *reprinted in* 1981 U.S.Code Cong. & Admin. News 2577, 2593–94. As Judge Reinhardt noted, "[t]he intent of Congress in amending the section was not to enable the BIA to deport an individual, like Start, who clearly qualified for relief." *Start*, 803 F.2d at 543 (Reinhardt, J., dissenting). In artificially dividing the petitioner's fraud into several discrete acts and in considering the petitioner's desire to be united with his family as evidence of bad character, the BIA decision was "manifestly contrary to the intent of the Congress." *Id.* at 544. Judge Reinhardt urges reversal in part on the grounds that the agency decision was based on inherent policy judgments that were contrary to the intent of the Congress. *See id.*

is in the best interest of this country." On one side of the scale are the positive factors: the petitioner's family ties to his lawful permanent resident wife, United States citizen son, and lawful permanent resident mother (although she was residing in the Philippines at the time of the hearing); hardship to be suffered by his family if he were separated from his wife and son; the absence of any criminal record or other evidence of illegal conduct in the United States; a steady employment record; the fact that the petitioner had been a good provider for both his family in the United States and his family in the Philippines; references produced by the petitioner as to his good character; and the petitioner's claim that he had no vices or bad habits. Against these are weighed the adverse factors, the three lies that Mr. Liwanag told the government from 1980 to 1984: (1) the lie that he told in 1980 to obtain entry, (2) the lie that he told in 1982 in petitioning for his wife and children to join him, and (3) the lie that he told in 1984 to hide his ineligibility and to prevent deportation. The BIA determined that the adverse factors outweighed the positive factors and denied the waiver.

While the BIA's decision is not untenable on its face, it must be admitted that the decision is far from obvious. Although making a misrepresentation to the government is not a praiseworthy activity, under the circumstances of this case, neither does it excite moral outrage. *Compare Hernandez–Robledo v. Immigration and Naturalization Serv.*, 777 F.2d 536, 541 (9th Cir.1985) (affirming the BIA's exercise of discretion in denying the waiver to a Mexican citizen with an American son, because of his recent conviction of a "serious" crime); *Dallo v. Immigration and Naturalization Serv.*, 765 F.2d 581, 588 (6th Cir.1985) (affirming the BIA's exercise of discretion in denying the waiver to an Iraqi citizen with an American wife who had gained entry into the United States by means of a fraudulent marriage to another woman and who had conspired to arrange a number of other fraudulent marriages with U.S. citizens). Judge Reinhardt is certainly justified in questioning whether the denial

of the waiver based solely on such a "grave misdeed" as misrepresenting one's marital status, particularly when balanced against considerable positive factors, is permissible under the Act. *See Start,* 803 F.2d at 543 (Reinhardt, J., dissenting).

One of the adverse factors weighed in this case, however, is universally admitted to have been irrelevant and impermissible. The statute waives deportation for aliens who gained entry by misrepresentation if the alien has a parent, spouse or child who is a U.S. citizen or legal permanent resident. Because the statute specifically forgives the misrepresentation, the mere fact that such a misrepresentation was made cannot be weighed as a factor against granting the waiver. The majority holds as much, as has the Ninth Circuit, *Start,* 803 F.2d at 542; *Hernandez–Robledo,* 777 F.2d at 541, and the government's lawyer in this case concedes the point. Thus all agree that in weighing the 1980 lie, the BIA considered an impermissible factor in its balancing of Mr. Liwanag's case. Nevertheless, the majority affirms the BIA's "erroneous weighing" on the grounds that "the BIA's denial of the waiver of deportability was nonetheless proper because of additional misrepresentations wrought by Liwanag." In holding that the BIA properly concluded that the 1982 lie and the 1984 lie outweighed the positive factors, the majority has affirmed a determination that the BIA did not make, and which is not discernible by a fair reading of its opinion.

Consideration of the 1980 lie is not incidental to the BIA decision, nor is it an alternative ground; rather, it is essential to the balancing. The Board's opinion unequivocally states that the original misrepresentation is to be weighed against the petitioner: "Adverse factors would include the nature and underlying circumstances of the fraud or misrepresentation involved...." Petitioner made the same argument to the BIA that he successfully made to this court that "all applicants for § 241(f) relief have committed fraud, and where the only fraud in a case is that which made him eligible for the relief, it

should not bar the relief as a matter of discretion." The BIA rejected that argument, however: "We do not agree with the respondent's assessment of his case.... [W]e are unwilling to minimize the nature and extent of his fraud the way the respondent has." Of the subsequent misrepresentations on which the majority opinion relies, the BIA holds that these acts "compounded" the original fraud. The majority is correct in noting that our review of the BIA decision is limited to a determination of whether there was an abuse of discretion. *Jarecha v. Immigration and Naturalization Serv.*, 417 F.2d 220, 224–25 (5th Cir.1969). But in reviewing an administrative decision on an abuse of discretion standard, this court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971)). An administrative decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983); *see also Farmworker Justice Fund, Inc. v. Brock*, 811 F.2d 613, 622 (D.C.Cir.), *vacated as moot*, 817 F.2d 890 (1987) (an agency decision may not rely on "statutorily impermissible or irrelevant factors"). When an agency's decision is based on impermissible or irrelevant factors, "[t]he reviewing court should not attempt itself to makeup for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given." *State Farm*, 463 U.S. at 43, 103 S.Ct. at 2867. At least one court has held that when one of four factors considered by the BIA in exercising its discretion was irrelevant and improperly considered, the court cannot determine how the BIA would have exercised its discretion had it considered only relevant factors, and the proper disposition is to vacate the order and remand the case to the BIA. *See Siang Ken Wang v. Immigration and Naturalization Serv.*, 413 F.2d 286, 287 (9th Cir.1969). Thus, even if the majority is correct in all its premises, it has committed error in not remanding to the BIA for reweighing of the relevant factors. Instead, the majority has "substitute[d] its judgment for that of the agency." *Overton Park*, 401 U.S. at 416, 91 S.Ct. at 824.

Because the BIA weighed an impermissible factor against the substantial positive factors, the decision itself must be vacated. The case should be remanded for reconsideration.

