United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 25, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 05-60924
_____

MARTIN GONZALEZ-MALDONADO,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

On Petition for Review of an Order of
the Board of Immigration Appeals

Before JONES, Chief Judge, and JOLLY and STEWART, Circuit Judges.

EDITH H. JONES, Chief Judge:

Petitioner Martin Gonzalez-Maldonado ("Gonzalez") appeals a Board of Immigration Appeals ("BIA") decision finding him statutorily ineligible for cancellation of removal and voluntary departure. Because Gonzalez did not give false testimony about his address for the purpose of obtaining immigration benefits, see 8 U.S.C. § 1101(f)(6), we **GRANT** the petition for review.

## I. BACKGROUND

Martin Gonzalez-Maldonado illegally entered the United States in 1989 at the age of fourteen. He lived and worked in the United States illegally until he met with a California attorney, Roberto Fernandez, in 2001 to "fix his status" through an asylum application. Even though Gonzalez was living in New Mexico, he

followed the attorney's instructions to put the attorney's California mailing address on the application to ensure that the attorney would receive important court documents through the mail. By signing the application, Gonzalez swore that its contents were either "all true or not all true."[1]

At an interview with an asylum officer in March 2001, Gonzalez testified that he had lived in southern California since December 2000, despite having signed a declaration in which he swore to tell the truth during his interview. The officer's notes specifically indicate the oath was administered.[2] Nevertheless, the officer concluded that Gonzalez was ineligible for asylum and referred his case to an immigration judge ("IJ").

Gonzalez appeared before an IJ and conceded removability, withdrew his asylum application, and sought relief in the form of cancellation of removal or voluntary departure. Gonzalez testified before the IJ that he had told the asylum officer during his March 2001 interview that he had lived in California since December 2000, even though he was actually living in New Mexico. He also testified that the asylum officer had asked if the information in the application was correct, and that he had answered yes, even though he knew the address was incorrect. Gonzalez recounted that

---

[1] The allegations in Gonzalez's asylum application are not at issue in this case.

[2] The record does not include a transcript of the March 2001 asylum hearing.

2

he had put the attorney's California address on the application at the attorney's direction.

On April 19, 2004, the IJ denied cancellation of removal and voluntary departure, concluding that Gonzalez could not show good moral character because he gave false testimony at the asylum hearing in March 2001 with the subjective intent of obtaining immigration benefits. The BIA adopted and affirmed the IJ's opinion on August 2, 2005. Gonzalez now petitions for review in this court.

## II.  STANDARD OF REVIEW

The BIA concluded that Gonzalez was statutorily ineligible for relief because he lacked good moral character. This legal conclusion is reviewable de novo under the REAL ID Act. See 8 U.S.C. § 1252(a)(2)(D); Hernandez-Castillo v. Moore, 436 F.3d 516, 519 (5th Cir.), cert. denied, 127 S. Ct. 40 (2006). The BIA's fact findings are reviewed for substantial evidence. See Lopez-Gomez v. Ashcroft, 263 F.3d 442, 444 (5th Cir. 2001) (per curiam). Under the substantial-evidence standard, a decision will be affirmed unless the "evidence compels a contrary conclusion." Carbajal-Gonzalez v. INS, 78 F.3d 194, 197 (5th Cir. 1996). This court reviews only the decision of the BIA and not that of the IJ, except to the extent that the IJ's decision influenced the BIA's decision. Id. Here, the BIA expressly "adopt[ed] and affirm[ed]" the IJ's decision.

### III.  DISCUSSION

### A.  False Oral Testimony

To qualify for cancellation of removal, Gonzalez must show that he possessed "good moral character" for the ten years preceding his application for relief.  See 8 U.S.C. § 1229b(b)(1).  A person does not have good moral character if he "has given false testimony for the purpose of obtaining any benefits under this chapter."  8 U.S.C. § 1101(f)(6).  "'[T]estimony' is limited to oral statements made under oath . . . [and] with the subjective intent of obtaining immigration benefits."  Kungys v. United States, 485 U.S. 759, 780, 108 S. Ct. 1537, 1551 (1988); see also Beltran-Resendez v. INS, 207 F.3d 284, 287 (5th Cir. 2000).

Gonzalez argues that he did not provide false oral testimony during his March 2001 asylum interview.  He notes that the asylum officer failed to mark on the asylum application whether Gonzalez had certified whether the facts in the application were true.[3]  However, the asylum officer's notes show that Gonzalez testified that he had lived in California since December 2000, even though he was then actually living in New Mexico.  Gonzalez admitted to the IJ that he had lied about his address to the asylum officer.

---

[3]    We need not speculate on the IJ's reliance on the written application because there was some proof of an oath confirming it.  Cf. Kungys, 485 U.S. at 780, 108 S. Ct. at 1551 ("'testimony' is limited to oral statements made under oath"); Beltran-Resendez, 207 F.3d at 287 ("false written statement is not false testimony under § 1101(f)").

Gonzalez also contends there is no evidence that he provided an oral oath at the asylum hearing. Kungys, however, does not require that the oath be given orally; only the false statements need be made orally. See 485 U.S. at 778, 108 S. Ct. at 1551; Beltran-Resendez, 207 F.3d at 287. There is substantial evidence in the record that Gonzalez signed an oath before the asylum officer in which he swore "to tell the truth during [the] interview." Accordingly, the BIA's conclusion that Gonzalez provided false oral testimony is supported by substantial evidence.

## B. Subjective-Intent Requirement

Going to the heart of this case, Gonzalez contends that the false testimony about his address was not made with the subjective intent to obtain immigration benefits. A finding that Gonzalez has given false testimony is alone insufficient to establish that he lacks good moral character. See 8 U.S.C. § 1101(f)(6). The statute also provides that the misrepresentation must have been "made with the subjective intent of obtaining immigration benefits." Kungys, 485 U.S. at 779-80, 108 S. Ct. at 1551. Misrepresentations made for other reasons like embarrassment, fear, or a desire for privacy do not meet this requirement. Id. at 780, 108 S. Ct. at 1551. Although Kungys rejected a materiality requirement because no such requirement appears in the statutory text, the Court pointedly observed that

> it will be relatively rare that the Government will be
> able to prove that a misrepresentation that does not have

5

> the natural tendency to influence the decision regarding immigration or naturalization benefits was nonetheless made with the subjective intent of obtaining those benefits.

Id. at 780-81, 108 S. Ct. at 1551.

This court explained the Supreme Court's subjective intent requirement in Liwanag v. INS, 872 F.2d 685 (5th Cir. 1989), which held that the BIA correctly refused to grant voluntary departure, a decision also governed by § 1101(f)(6), because the alien's misrepresentation about his marital status showed his bad moral character. Id. at 688, 690. The alien's false testimony was both material and subjectively intended to obtain immigration benefits; the success of his visa application turned precisely on his marital status. Id. at 686, 689; see also 8 U.S.C. § 1153(a)(2). Liwanag fell squarely within § 1101(f)(6), as there could be no other purpose in his misrepresentation than to obtain the desired immigration benefit.

Liwanag is distinguishable from this case. Gonzalez's misrepresentation is immaterial because his address had no bearing on his receipt of immigration benefits. We understand that § 1101(f)(6) "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of receiving immigration or naturalization benefits." Kungys, 485 U.S. at 780, 108 S. Ct. at 1551. Nevertheless, the Government has a more difficult burden to show that Gonzalez made an immaterial

6

misrepresentation with such intent. See id. The record concerning his misstated address demonstrates, if anything, that Gonzalez lacked the subjective intent to use the false testimony improperly. He provided his lawyer's address in Santa Ana, California, to the asylum officer after the lawyer told him it would facilitate the lawyer's receiving court appearance notices. His subjective intent, fairly viewed, was to facilitate the immigration process, not to predetermine or influence its favorable outcome. He was not thereby demonstrating "bad moral character."

Reinforcing this benign characterization of Gonzalez's intent is his otherwise spotless record as an employee, a husband and father, all of which the IJ acknowledged, but failed to include in the overall finding of intent. Notably, the IJ repeatedly stated that she was "favorably impressed" with Gonzalez, specifically finding that he was a nationally recognized employee of the Marriott Corporation who had worked hard to support himself and his family. In addition, the IJ was impressed with Gonzalez's efforts as a good husband and father to assimilate into this country and become "a respected member of the community." See United States v. Hovsepian, 422 F.3d 883, 888 (9th Cir. 2005) (en banc) (citing evidence of good moral character). Aside from his false testimony at the March 2001 asylum hearing, the record is devoid of evidence of Gonzalez's bad moral character. This is not to say that Gonzalez's good character trumps the statutory disability based on false testimony, but his character sheds light

7

on whether he had an impermissible subjective intent in connection with the false testimony.

Under the circumstances, Gonzalez's listing of his attorney's address for the attorney's convenience is more akin to a misrepresentation to avoid embarrassment, fear, or to protect one's privacy than a false statement made to obtain immigration benefits. Kungys, 485 U.S. at 782, 108 S. Ct. at 1552; cf. Medina v. Gonzales, 404 F.3d 628, 637 (2d Cir. 2005) (petitioner's lies about political persecution, even though made at the direction of her attorney, were deliberately made to enhance her chances of obtaining immigration relief). Although the asylum application itself sought to obtain immigration benefits, we cannot conceive how this misrepresentation, even if deliberate, was intended to influence the asylum officer's decision. See, e.g., Hovsepian, 422 F.3d at 888 (omissions were honest oversights rather than deliberate misrepresentations made with subjective intent to obtain naturalization). Put otherwise, if Gonzalez's immaterial misstatement about his residency in California runs afoul of § 1101(f)(6), the subjective-intent requirement explained in Kungys becomes superfluous. The evidence "compels a contrary conclusion" to the BIA finding that Gonzalez subjectively intended, by means of false testimony about his address, to obtain immigration benefits.

## IV.  CONCLUSION

8

Accordingly, we **GRANT** the petition for review, **VACATE** the BIA's decision and order, and **REMAND** to the BIA for further proceedings consistent with this opinion.