# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 19, 2010

No. 09-60308
Summary Calendar

Charles R. Fulbruge III
Clerk

JOHN ALEXANDER RODRIGUEZ, also known as John Alexander
Rodriguez-Burgos

                                        Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL

                                        Respondent

Petition for Review of An Order of the
Board of Immigration Appeals
BIA No. A094 917 563

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

John Alexander Rodriguez, a native and citizen of Colombia, petitions for review of the Board of Immigration Appeals' (BIA) order affirming the Immigration Judge's (IJ) decision that Rodriguez did not qualify for asylum. The BIA found Rodriguez was ineligible for asylum under the Immigration and Nationality Act (INA) § 208, 8 U.S.C. § 1158, because Rodriguez did not establish

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-60308

past persecution or a well-founded fear of future persecution. Additionally, the BIA concluded that Rodriguez did not establish that a protected ground was at least one central reason for his fear of persecution.

We review the decision of the BIA and not that of the IJ, except to the extent that the IJ's decision impacted the BIA's decision. *Gonzales-Maldonado v. Gonzales*, 487 F.3d 975, 976 (5th Cir. 2007).[1] We accord deference to the BIA's interpretation of the immigration statute unless there are compelling indications that its interpretation is incorrect. *Rivera-Cruz v. INS*, 948 F.2d 962, 966 (5th Cir. 1991). Thus, absent dispositive error of law, we must affirm the Board's determination that Rodriguez was ineligible for asylum if we find that its decision was supported by substantial evidence in the record. 8 U.S.C. § 1105a(a)(4); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

To qualify for asylum, an applicant must show he is a refugee within the meaning of 8 U.S.C. § 1158(b)(1)(B)(i), that is, he is unable or unwilling to return to his country of origin "because of persecution or a well-founded fear of persecution" on account of a protected ground. 8 U.S.C. § 1101(a)(42); *see also Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444–45 (5th Cir. 2001). The applicant must also establish that race, religion, nationality, membership in a particular social group, or political opinion "was or will be at least one *central reason* for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added).

Rodriguez does not challenge the Board's finding that he failed to establish that he was persecuted in Colombia before leaving for the United States in March 2005. While in Columbia, he had no personal contact with the

---

[1] Rodriguez dedicates a substantial portion of his brief to arguing the timeliness of his application. However, the BIA's holding was without regard to the issue of timeliness. Since we only review the IJ's decision to the degree that it impacted the BIA's opinion, the timeliness issue is not before us. *See Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997) (noting the court only has authority to review the BIA's decision, unless the IJ's conclusions impacted the BIA's decision).

Revolutionary Armed Forces of Colombia (FARC), the group he now claims will persecute him if he returns. FARC's first contact with the Rodriguez family was an incident in July 2004, during which Rodriguez's father told FARC guerillas who had come to his home that he was associated with President Uribe. Following this encounter, which, according to Rodriguez, demonstrates that FARC targeted his father, and by extension, will target him, Rodriguez remained in Columbia for eight months without incident. After leaving Columbia, Rodriguez lived for approximately one year in the United States, unaware of his father's ongoing problems with FARC. During this time, Rodriguez's brother was living openly in Colombia with no problems from FARC. Nevertheless, Rodriguez contends that he cannot return to Columbia because he fears persecution from FARC on the basis of his father's political views, which he argues that FARC will impute to him.

Substantial evidence supports the BIA's finding that FARC's interest in Rodriguez's father was not primarily on account of a statutorily protected ground. *See* 8 U.S.C. § 1158(b)(1)(B)(i). Rodriguez testified that FARC's interest in his father was due primarily to his father's wealth. Rodriguez's father testified that he was perceived in Colombia as "not a political person but a monied comfortable person." Although Rodriguez's father also testified that FARC beat him on account of his association with President Uribe, this encounter was premised on FARC's interest in verifying the accuracy of a list of the father's business assets—a list which FARC compiled prior to the encounter, and thus prior to their knowledge of his association with President Uribe. We do not recognize economic extortion as a form of persecution under immigration law, nor do we recognize wealthy Columbian businessmen as a protected group. *See Thapa v. Holder*, 2009 WL 4885138 (5th Cir. Dec. 16, 2009) (listing cases). Further, although Rodriguez alleges that FARC's motives for persecuting his father are "mixed," substantial evidence supports the BIA's conclusion that

economic interests were the primary motive. *See Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009) ("Although a statutorily protected ground need not be the only reason for harm, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm.").

Additionally, even if we were to assume that his father's persecution was primarily politically motivated, Rodriguez "cannot rely solely on the persecution of [his] family member[] to qualify for asylum." *See Arif v. Mukasey*, 509 F.3d 677, 681 n.15 (5th Cir. 2007) (alteration in original) (internal quotation marks and citation omitted). Indeed, the statute requires "the applicant [to] establish that . . . political opinion was or will be at least one central reason for persecuting *the applicant*." 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added); *see also Tamas-Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir. 2000) (concluding that while persecution of family members can directly affect an applicant seeking asylum, the asylum statute requires sufficient individual persecution of the applicant); *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994) (requiring an asylum applicant to demonstrate "a good reason to fear that he or she will be *singled out* for persecution." (internal quotation marks omitted)). In light of the fact that both Rodriguez and his brother lived openly in Columbia without problems, the BIA's decision not to impute his father's persecution to Rodriguez is well-supported.

In sum, the BIA's determinations are supported by substantial evidence. Rodriguez's petition for review is DENIED.