# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 10, 2012

No. 12-60389
Summary Calendar

Lyle W. Cayce
Clerk

LUIS CASTILLO-ENRIQUEZ,

Petitioner,

versus

ERIC H. HOLDER, JR., U.S. Attorney General,

Respondent.

Petition for Review of an Order of
the Board of Immigration Appeals

Before DAVIS, SMITH, and PRADO, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Luis Castillo-Enriquez petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal of the denial of his applications for withholding of removal and Temporary Protected Status ("TPS"). He also moves for stay of deportation. The government moves for summary denial of the petition. We deny a stay of deportation and grant the motion for summary denial of the petition.

No. 12-60389

I.

The facts are uncontested. Castillo-Enriquez illegally entered the United States in 2002. In 2008, the Department of Homeland Security ("DHS") initiated removal proceedings; Castillo-Enriquez conceded removability but applied for relief from removal based on his fear of harm in his native El Salvador. He also sought review of DHS's denial of his application for TPS. He testified that his parents are lawful permanent residents of the United States who had left El Salvador when he was a child. He fears returning to El Salvador, because his grandmother received an extortionate note from anonymous individuals in 2007, demanding $6,000 and threatening harm to his family.

II.

The immigration judge denied Castillo-Enriquez's applications and ordered him removed to El Salvador. Castillo-Enriquez appealed to the BIA, which affirmed. We review the BIA's legal determinations *de novo* but with "considerable deference to the BIA's interpretation of the legislative scheme it is entrusted to administer." *Zhu v. Gonzalez*, 493 F.3d 588, 594 (5th Cir. 2007) (citations omitted).

Castillo-Enriquez argues that his removal should be withheld because his "life or freedom would be threatened in [El Salvador] because of the alien's . . . membership in a particular social group." 8 U.S.C. § 1231(b)(3)(A). We agree with the BIA that being extorted by an anonymous group of individuals who perceive petitioner's family to be wealthy does not require the Attorney General to withhold removal. "We do not recognize economic extortion as a form of persecution under immigration law, nor do we recognize wealthy [Salvadorians] as a protected group." *Rodriguez v. Holder*, 366 F. App'x 555, 557 (5th Cir. 2010); *see also Thapa v. Holder*, 357 F. App'x 591, 593 (5th Cir. 2009).

No. 12-60389

Castillo-Enriquez also contends that removal should be withheld because he is eligible for TPS. The TPS program permits eligible foreign nationals to remain in the United States temporarily while their home country is designated for relief under the TPS program because there is an ongoing armed conflict within the state, it has suffered a natural disaster, or it is otherwise experiencing conditions preventing the safe return of aliens. *See* 8 U.S.C. § 1254a. An alien is eligible for TPS only if he (1) has been continually present in the United States since the most recent designation of the state, (2) has continuously resided in the United States since the designated date, (3) is an admissible immigrant (with certain exceptions), and (4) has registered during the appropriate registration period. *Id.* at § 1254a(c)(1)(A). The Attorney General designated El Salvador for TPS on March 9, 2001, because of devastation from a series of earthquakes, setting the date for TPS-eligibility as February 13, 2001. Because Castillo-Enriquez concededly entered the United States in July 2002, he fails to meet the first two requirements of TPS eligibility.

Castillo-Enriquez maintains that he is nonetheless eligible for TPS because the regulations governing TPS allow his parents' eligibility to be imputed to him. Specifically, he points to 8 C.F.R. § 1244.2, which states that an alien may be granted TPS if he

> (a) Is a national, as defined in section 101(a)(21) of the Act, of a foreign state designated under section 244(b) of the Act;

> (b) Has been continuously physically present in the United States since the effective date of the most recent designation of that foreign state;

> (c) Has continuously resided in the United States since such date as the Attorney General may designate;

> (d) Is admissible as an immigrant except as provided under § 1244.3;

3

No. 12-60389

(e) Is not ineligible under § 1244.4; and

(f)(1) Registers for Temporary Protected Status during the initial registration period announced by public notice in the Federal Register, or

(2) During any subsequent extension of such designation if at the time of the initial registration period:

. . .

(iv) The applicant is a spouse or child of an alien currently eligible to be a TPS registrant.

. . .

(g) Has filed an application for late registration with the appropriate Service director within a 60-day period immediately following the expiration or termination of conditions described in paragraph (f)(2) of this section.

The regulation governing TPS eligibility closely mirrors the statutory requirements. Castillo-Enriquez reasons that, because his parents are eligible for TPS, he is eligible even though he does not meet subsections (b) and (c). Though 8 C.F.R. § 1244.2(f)(2)(iv) grants an extension of the registration requirement for the children of TPS-eligible aliens, the plain language of the regulation does not—as Castillo-Enriquez contends—make children of TPS-eligible aliens themselves eligible regardless of the continual-presence and continual-residence requirements. Contrary to Castillo-Enriquez's reading of the regulation, the word "or" at the end of subsection (f)(1) does not mean that an alien is eligible for TPS so long as any of the subsection (f)(2) requirements are met, irrespective of the requirements in subsections (a) through (e)—an argument easily refuted by reading the word "and" at the end of subsection (e).

By rejecting Castillo-Enriquez's interpretation of the TPS regulations, we join the two other circuit courts of appeals that have considered the argument.

4

No. 12-60389

*See de Leon-Ochoa v. Attorney Gen. of the United States*, 622 F.3d 341 (3d Cir. 2010); *Cervantes v. Holder*, 597 F.3d 229 (4th Cir. 2010).  The plain terms of the statute and regulation at issue dictate that Castillo-Enriquez fails to meet the physical-presence and residence requirements and is thus ineligible to receive TPS.  Accordingly, we need not address Castillo-Enriquez's argument that the BIA incorrectly determined he was not a "child" under the Immigration and Nationality Act.  Finally, we agree with the BIA and the Third Circuit that the waiver provisions of 8 U.S.C. § 1254a(c)(2), by their plain terms, apply only to 8 U.S.C. § 1182(a) and not to any requirement for TPS eligibility in § 1254a(c)-(1)(A), including the physical-presence and residency requirements.  *See de Leon-Ochoa*, 622 F.3d at 345.

Castillo-Enriquez's motion for stay of deportation is DENIED.  The motion for summary denial of the petition for review is GRANTED.  The petition for review is DENIED.