# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2023

Lyle W. Cayce
Clerk

————————

No. 21-60875

————————

Maria Cristina Tobar,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

———————————————————————

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A094 054 378

———————————————————————

Before Jolly, Haynes, and Graves, *Circuit Judges*.

E. Grady Jolly, *Circuit Judge*:

Maria Cristina Tobar is a native and citizen of El Salvador. An Immigration Judge ("IJ") denied her application for Temporary Protected Status ("TPS"), finding that she was ineligible for such relief because she had not satisfied the continuous physical presence requirement. Tobar appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision. We find no error and DENY Tobar's petition for review.

No. 21-60875

## I.

Tobar is a native and citizen of El Salvador. She originally entered the United States in 1997 under her birth name, Guadalupe Tobar. That same year, Tobar was apprehended by immigration officials and ordered removed in absentia. But as is often the case, Tobar remained in the United States. At some point, she sought to adjust her immigration status by applying for TPS—a discretionary form of relief that allows noncitizens to remain in the United States—but she applied under a different name. Tobar was granted TPS in 2003 under that different name and continued to renew her TPS using that information.

TPS, however, requires noncitizens to maintain a continuous physical presence in the United States for a set period of time. *See* 8 U.S.C. § 1254a; *Castillo-Enriquez v. Holder*, 690 F.3d 667, 668–69 (5th Cir. 2012) (citing 8 U.S.C. § 1254a(c)(1)(A)). Leaving the country can break a noncitizen's continuous physical presence. *See Castillo-Enriquez*, 690 F.3d at 668-69 (citing 8 U.S.C. § 1254a(c)(1)(A)). That said, noncitizens may leave the country without disturbing their continuous physical presence if their absences from the United States are "brief, casual, and innocent." 8 U.S.C. § 1254a(c)(4). According to immigration regulations, a "brief, casual, and innocent" absence is a departure from the United States that is "of short duration and reasonably calculated to accomplish the purpose(s) for the absence." 8 C.F.R. § 1244.1.

Since obtaining TPS, Tobar has departed the United States only on one occasion, but she was out of the country for 111 days. In 2015, she quit her job and returned to El Salvador to visit her sick father, whom she hoped to see once more before he passed away. She considered seeking permission from immigration officials to leave the United States but decided not to do so because her TPS was not in her own name.

No. 21-60875

Upon her return, Tobar was apprehended by Border Patrol Agents. The Department of Homeland Security initiated formal removal proceedings against her. At her hearing before the IJ, Tobar conceded to being removable as charged. Tobar, nonetheless, sought relief from removal by applying once more for TPS—this time using her own name. [1]

At her removal hearing, the IJ determined that Tobar's trip to El Salvador was a problem. That is, the IJ determined that she was ineligible for TPS because her 111-day absence disrupted her continuous physical presence in the United States. Tobar argued that her absence did not disrupt her presence because the absence was "brief, casual, and innocent." The IJ, however, disagreed and concluded that her absence was not brief, casual, and innocent because it was not "of short duration" as required by 8 C.F.R. § 1244.1.

Tobar appealed to the BIA. The BIA affirmed the IJ's decision, concluding that Tobar was not statutorily eligible for TPS because her absence did not meet the definition of "brief, casual, and innocent." The BIA specifically held that Tobar "did not meet her burden of establishing that a departure of 111 days is a 'short duration' that was reasonably calculated to accomplish the purpose of her absence from the United States."

The IJ had made additional findings of fact that supported the BIA's holding. First, the IJ found that although Tobar's father had been diagnosed with cancer in 2002, Tobar had waited thirteen years to return to see him. Second, the IJ found that although Tobar stated her father had passed away only a week after her return to the United States in 2015, other evidence, which she does not seem to dispute, indicated that he did not pass away until

_____

[1] Tobar also sought relief by applying for cancellation of removal, which the IJ denied. On appeal to the BIA, Tobar did not contest the denial of cancellation of removal.

2017. Thus, resting on such findings, the BIA concluded that the evidence did "not establish that it was necessary for her to remain for that length of time." Accordingly, the BIA affirmed the IJ's decision and denied Tobar relief. This petition for review followed.

## II.

Generally, we review only the final decision of the BIA. *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012) (citing *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009)). Here, the BIA issued its own opinion and elaborated on its own reasoning, so we review the BIA's decision. *Orellana-Monson*, 685 F.3d at 517. "The BIA's conclusions of law are reviewed de novo, although deference is given to the BIA's interpretation of immigration regulations if that interpretation is reasonable." *Barrios–Cantarero v. Holder*, 772 F.3d 1019, 1021 (5th Cir. 2014) (per curiam) (citing *Hernandez-Castillo v. Moore*, 436 F.3d 516,519 (5th Cir. 2006)). That is, when the BIA's legal conclusion embodies an interpretation of its own ambiguous regulation, we defer to the BIA's interpretation unless it is "plainly erroneous or inconsistent with the regulation." *See Dominion Ambulance, L.L.C. v. Azar*, 968 F.3d 429, 434 (5th Cir. 2020) (cleaned up) (quoting *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011)).

## III.

On appeal, Tobar's primary contention is that the BIA erred in concluding that her absence did not meet the definition of a "brief, casual, and innocent absence" under 8 C.F.R. § 1244.1. In her view, the BIA misinterpreted the regulation by applying a per se rule that absences exceeding three months can never be absences "of short duration and reasonably calculated to accomplish" their purposes. Tobar contends that this interpretation was legal error because there is no statutory or regulatory TPS provision indicating that a departure exceeding three months cannot

qualify as a brief, casual, and innocent absence. She further argues that 111 days was a relatively short period of time given the circumstances.

We can agree that the phrase "of short duration and reasonably calculated to accomplish the purpose(s) for the absence" is not further defined in § 1244.1, nor is it defined in similar regulatory provisions. The lack of a single, precise definition indicates, however, that the regulation is malleable—that is, it is to be interpreted in the light of given circumstances. Consequently, we defer to the BIA's interpretation of the regulation in the context of this case unless it is plainly erroneous or inconsistent with the regulation.

Here, we see nothing suggesting that the BIA's application of the regulation's terms to the circumstances surrounding Tobar's absence was plainly erroneous or inconsistent with the regulation itself. *Dominion Ambulance*, 968 F.3d at 434; *Corzo-Rodriguez v. Holder*, 559 F. App'x 358, 362 (5th Cir. 2014) (per curiam) (deferring to BIA's interpretation of regulation when it was not plainly erroneous). The BIA came to its determination that Tobar's absence from the United States was not "of short duration and reasonably calculated to accomplish" her purpose of visiting her sick father in the light of a factual record that shows: (1) that she quit her job before she departed; (2) that she was gone for 111 days; (3) that she had waited thirteen years since her father's cancer diagnosis to visit him; and (4) that the evidence, contrary to what she said, indicated that his death was not imminent—he did not die until two years after her return to the United States. Thus, on the totality of the record before us, we cannot say that the BIA erred in its conclusion that Tobar failed to satisfy the continuous physical presence in the United States required to be eligible for TPS.

No. 21-60875

## IV.

For the reasons given above, Tobar's petition for review of the BIA's decision is

DENIED.