# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 13, 2025

Lyle W. Cayce
Clerk

———————

No. 23-60325

———————

Estela Guadalupe Sanchez Contreras,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

———————————————————

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A088 968 776

———————————————————

Before Richman, Graves, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Estela Guadalupe Sanchez Contreras seeks review of the denial of her applications for withholding and cancellation of removal. Finding no error, we DENY her petition for review.

I

Sanchez Contreras, a native and citizen of El Salvador, entered the United States without inspection in April 2000. On June 22, 2010, she was

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-60325

served with a notice to appear, which charged her with removability under 8 U.S.C. § 1182(a)(6)(A)(i). She admitted the factual allegations in the notice to appear and conceded removability. She then applied for withholding of removal under 8 U.S.C. § 1231(b)(3), cancellation of removal under 8 U.S.C. § 1229b(b)(1), and protection under the Convention Against Torture (CAT).

Sanchez Contreras sought withholding of removal based on the protected ground of membership in a particular social group (PSG), namely "family members of individuals persecuted in their home country." Her application for withholding of removal asserted that she fled from El Salvador in 2000 because a criminal gang threatened to harm her if her parents failed to pay them extortion money. After her arrival in the United States, a gang member contacted her and threatened to murder her parents if she did not make monthly payments, and she made payments for several years. She claimed that she could not return to El Salvador because the gang would kidnap her son the moment they arrived, and she would not have the money to make any extortion payments.

Sanchez Contreras also submitted evidence regarding country conditions in El Salvador, including evidence that children in El Salvador were subjected to commercial sexual exploitation and gang recruitment for illicit activities, such as trading in arms and drugs and committing homicide. The evidence also identified shortcomings with El Salvador's healthcare system, including substandard medical care, overcrowded hospitals, higher costs, and limited access to private hospitals.

In her application for cancellation of removal, Sanchez Contreras asserted that her removal would result in hardship to her son, a United States citizen born in January 2010. She claimed that her son would not join her in El Salvador because his "safety will be jeopardized due to the high crime rate and children being recruited by unlawful groups"; he also would not have

access to a good education and healthcare. She filed supplemental documentary evidence of her employment, income, and homeownership, including her tax returns, and evidence of her son's health insurance coverage through her employer, his grade school records, and letters from his teachers and coaches about his education and extracurricular activities.

In February 2019, Sanchez Contreras appeared with counsel before an immigration judge (IJ) for a hearing. She testified that her parents had urged her to leave El Salvador in 2000, after gang members told her father that "one of his children was going to pay the consequences" if he did not pay the gang. Armed gang members later told her they had spoken to her father, and he "knew what he had to do." Her father initially paid the gang, but he stopped after Sanchez Contreras and her siblings entered the United States.

She further testified that in 2007, the gang leader contacted her in the United States and stated that her parents would be murdered if she did not pay the gang $100 per month. She made payments for several years, but the gang kept increasing the amount. When the gang demanded $2,000 per month in 2015, she could only make one payment, and her parents temporarily relocated to a relative's house. The gang leader told her that she "was going to pay for it" if she ever returned to El Salvador. Sometime later, the Salvadoran police attempted to capture the gang leader, but he fled from the area and went into hiding. Many of the gang members were killed or incarcerated. The gang stopped contacting her parents, and they eventually returned to their house in El Salvador.

Sanchez Contreras testified that her nine-year-old son was an excellent third grade student. He participated in school activities such as swimming and soccer. He spoke Spanish but was not fluent. Her son had asthma, with symptoms triggered by dust and allergies, but he experienced

no more than two asthma attacks per year that were controlled with medication.

Sanchez Contreras was her son's sole financial provider; she had not had contact with his biological father since her pregnancy. She initially testified that she would not take her son with her to El Salvador but later stated that she would take him if she had no other option. She thought her son would not receive a proper education and would be deprived of healthcare in El Salvador. She also feared that criminals would kidnap him for ransom.

The IJ denied Sanchez Contreras's applications and ordered that she be removed to El Salvador. The BIA affirmed the IJ's decision. Regarding her eligibility for withholding of removal, it upheld the IJ's findings that the extortion and threats she had experienced did not qualify as persecution, there was no nexus between the harm and her membership in a PSG because the perpetrators' motivation was financial gain, and she had failed to show a clear probability of future persecution because her fear of future harm was not objectively reasonable. The BIA also upheld the IJ's finding that Sanchez Contreras was not eligible for cancellation of removal because she had failed to meet her burden of showing that her removal would result in exceptional and extremely unusual hardship to a qualifying relative, i.e., her minor son, a United States citizen. Because Sanchez Contreras did not contest the denial of CAT protection, the BIA deemed that claim waived. Sanchez Contreras now petitions for review.[1]

---

[1] Sanchez Contreras does not present any challenge to the denial of CAT protection here, so she has forfeited that argument. *See Chambers v. Mukasey*, 520 F.3d 445, 448 n.1 (5th Cir. 2008) (recognizing that petitioners waive issues that they do not brief).

II

We have jurisdiction to review final orders from the BIA under 8 U.S.C. § 1252(a). "While we typically only review the final decision of the BIA, when the IJ's ruling plays into the BIA's decision, as it does in this case, we review both the IJ's and the BIA's decisions." *Parada-Orellana v. Garland*, 21 F.4th 887, 893 (5th Cir. 2022). Questions of law, such as the BIA's application of the appropriate legal standard, are reviewed de novo. *Id.*

III

A

Sanchez Contreras argues that the BIA's determination that she failed to establish her eligibility for withholding of removal is legally erroneous and contrary to the substantial weight of the evidence in the record. She contends that she provided sufficient evidence demonstrating nexus between the persecution she suffered and fears, and her membership in a "cognizable PSG based on ties to her family whose members were already targeted by the criminal gang."

The BIA's factual determination that an individual is not eligible for withholding of removal is reviewed under the substantial evidence standard. *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). Under that standard, the petitioner has the burden of showing that "the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 489 (5th Cir. 2015) (internal quotation marks and citation omitted).

To be eligible for withholding of removal, a noncitizen must demonstrate a clear probability of persecution based on race, religion, nationality, membership in a PSG, or political opinion. *Arif v. Mukasey*, 509 F.3d 677, 680 (5th Cir. 2007). The noncitizen's membership in the proposed

PSG must be "at least one central reason for persecuting" her. *Vazquez-Guerra*, 7 F.4th at 271 (internal quotation marks and citation omitted); *accord Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009). "[A] statutorily protected ground need not be the only reason for harm, [but] it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Shaikh*, 588 F.3d at 864 (internal quotation marks and citation omitted). Failure to demonstrate nexus is dispositive for withholding of removal. *See Gonzales-Veliz v. Barr*, 938 F.3d 219, 224 (5th Cir. 2019).

Here, substantial evidence supports the BIA's determination that Sanchez Contreras failed to demonstrate the requisite nexus. According to her testimony, which the IJ found generally credible, gang members threatened to harm his children if her father did not pay them money. Her father decided that it would be better and safer for the children to go to the United States than for him to continue paying the money. As a result, Sanchez Contreras left El Salvador for the United States in 2000, and her siblings followed later. Before she left El Salvador, gang members told Sanchez Contreras that her father knew what he had to do. Although they were armed, she was not physically harmed during the encounter. Her father made payments only until all his children were in the United States. He and her mother remained in El Salvador.

Six or seven years after she arrived in the United States, the gang leader called Sanchez Contreras and threatened to kill her parents in El Salvador unless she paid the gang. She began making monthly payments of $100, but the amount steadily grew to $2,000. She could no longer afford the payments and stopped paying in about 2015. The gang told her that she eventually would return to El Salvador and would "pay for it" then. Her parents continued to live in El Salvador and were not harmed, even after she stopped making the payments. The gang killed other people whose families could not pay the money demanded, however, and a gang associate was killed

by police in front of her parents' house. She was afraid to return to El Salvador and feared that the gang would target her son for ransom.

The BIA reasonably determined that the perpetrators of the extortion were motivated by financial gain rather than her membership in a PSG. We have held that economic extortion does not constitute persecution on account of a protected ground. *Garcia v. Holder*, 756 F.3d 885, 890 (5th Cir. 2014); *see, e.g., Martinez-De Umana v. Garland*, 82 F.4th 303, 312 (5th Cir. 2023) (explaining that conduct driven by criminal motives does not constitute persecution based on a protected ground); *Ramirez-Mejia*, 794 F.3d at 493 (determining that gang's attempt to extort the applicant's family was not persecution on account of protected ground because economic extortion is not a form of persecution under immigration law); *Castillo-Enriquez v. Holder*, 690 F.3d 667, 668 (5th Cir. 2012) (concluding that extortion by anonymous individuals who perceived the applicant's family to be wealthy is not persecution on account of a protected ground). Sanchez Contreras's failure to show the requisite nexus is dispositive for withholding of removal. *See Gonzales-Veliz v. Barr*, 938 F.3d 219, 224 (5th Cir. 2019).[2]

B

Regarding cancellation of removal, Sanchez Contreras argues that the BIA erred by affirming the IJ's finding that her son would not experience exceptional and extremely unusual hardship if she were removed to El Salvador. She contends that she made the requisite showing of hardship because (1) she would have diminished income in El Salvador that would

---

[2] We need not reach Sanchez Contreras's additional arguments that she demonstrated past persecution and a clear probability of future persecution. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

cause her son financial suffering, since she was his sole financial provider; (2) El Salvador had a lower standard of living, inferior education and healthcare systems, and unsafe conditions for children due to crime and gangs; and (3) her son suffered from asthma and would need to adjust to the language difference, the different types of classes, and the loss of friendships in the United States.

Cancellation of removal is a discretionary form of relief. *See* 8 U.S.C. § 1229b(b)(1). To be eligible for relief, a noncitizen must show that, among other things, her removal from the United States "would result in exceptional and extremely unusual hardship" to a qualifying relative who is a citizen of the United States. 8 U.S.C. § 1229b(b)(1)(D). Under § 1252(a)(2)(B)(i), courts lack jurisdiction to review "any judgment regarding the granting of" certain types of discretionary relief, including cancellation of removal under § 1229b. Nevertheless, this court retains jurisdiction over "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). A challenge to "the application of a legal standard to undisputed or established facts" is a legal question that may be reviewed under § 1252(a)(2)(D). *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225 (2020). By contrast, the factual determinations underlying denials of discretionary relief are excluded from judicial review. *Patel v. Garland*, 596 U.S. 328, 331 (2022).

After completion of briefing in this appeal, the Supreme Court clarified that the BIA's application of the "hardship standard to a given set of facts is reviewable as a question of law under § 1252(a)(2)(D)." *Wilkinson v. Garland*, 601 U.S. 209, 217 (2024). It explained that "[m]ixed questions 'are not all alike'"; "a more deferential standard of review" applies when mixed questions are primarily factual. *Id.* at 221–22. Because determining whether established facts satisfy the hardship requirement is a primarily factual mixed question, "that review is deferential." *Id.* at 225. "Accordingly, taking the 'established facts' as found by the agency, we must

review 'deferential[ly]' the agency's determination that [Sanchez Contreras] was ineligible for cancellation." *Sustaita-Cordova v. Garland*, 120 F.4th 511, 518 (5th Cir. 2024) (citing *Wilkinson*, 601 U.S. at 225).

To meet the "exceptional and extremely unusual hardship" standard under 8 U.S.C. § 1229b(b)(1), "a noncitizen must demonstrate that a qualifying relative would suffer hardship that is substantially different from or beyond that which would ordinarily be expected to result from their removal, but need not show that such hardship would be unconscionable." *Wilkinson*, 601 U.S. at 215 (internal quotation marks omitted); *see also In re Andazola-Rivas*, 23 I. & N. Dec. 319, 322 (B.I.A. 2002) (describing the hardship requirement as a "very high standard"). The agency considers several factors, including "the ages, health, and circumstances of qualifying . . . relatives," when assessing hardship. *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63 (B.I.A. 2001). "A lower standard of living or adverse country conditions in the country of return are factors to consider only insofar as they may affect a qualifying relative, but generally will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship." *Id.* at 63–64.

Here, the IJ explicitly considered Sanchez Contreras's testimony regarding the country conditions in El Salvador as well as her testimony that she would not be able to obtain comparable employment in El Salvador, she was her son's sole financial provider, he could not obtain a proper education in El Salvador, he suffered from asthma, and he would need to adjust to losing his friends and speaking a different language. The IJ concluded that many of the hardships would be mitigated by the facts that her parents had a home and lived in El Salvador, her son spoke Spanish, and she could sell her home to help finance their transition to El Salvador. The IJ also considered her testimony that she and her family had been extorted by gangs, that she and her parents had been threatened when she could not pay the gangs, and that

her parents had been in El Salvador for the past 20 years without harm. He also noted most of the gang members were either dead or on the run.

The BIA affirmed the IJ's decision that Sanchez Contreras was ineligible for cancellation of removal because the hardship her son would face "is not substantially different from, or beyond, that which would normally be expected when children accompany parents who are removed to their country of origin." The record reflects that the IJ and BIA fully considered all relevant hardship evidence when determining whether Sanchez Contreras's son faced exceptional and extremely unusual hardship if she was removed to El Salvador.

Sanchez Contreras argues that the BIA committed legal error or a due process violation by failing to properly consider all the hardship evidence in the aggregate, as its precedent required. She asserts that the BIA incorrectly recounted her testimony about her son's access to proper healthcare in El Salvador. When asked, "What do you think about healthcare? Do you think that he will have—he will be deprived of healthcare?", Sanchez Contreras responded "Yes." The IJ interpreted her response to mean that her son will have access to healthcare. The BIA affirmed the IJ's factual finding on this issue. Although we retain jurisdiction to review the application of the exceptional and extremely unusual hardship standard to undisputed facts, we lack jurisdiction to review an application of that standard when the IJ's underlying factual findings are disputed. *See Wilkinson*, 601 U.S. at 225 (emphasizing that the factual findings underlying the BIA's conclusion on the issue of hardship, including "an IJ's factfinding on credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides," remain unreviewable).

Moreover, the IJ and BIA reasonably concluded that Sanchez Contreras's son's health conditions could not sustain a hardship finding. The

IJ considered her testimony that asthma was her son's only medical condition, he experienced up to two asthma attacks a year but took medication to control them, and his asthma did not inhibit his ability to swim and play soccer. No documentation of her son's medical condition, including his asthma, was submitted to the IJ. The record therefore supports the BIA's finding that her son "has no serious health problems or disabilities."

Even construing Sanchez Contreras's response as testimony that her son would not receive adequate healthcare in El Salvador, a reviewing court is not bound to accept an applicant's statements as fact. *See Garland v. Ming Dai*, 593 U.S. 357, 372–73 (2021). The IJ generally found her to be a credible witness, but he gave less weight to her testimony about her son's future in El Salvador because her responses did not appear "well thought out." No evidence or testimony was presented showing that her son ever required hospitalization for his asthma, or that his medication was unavailable or would be unaffordable in El Salvador.[3]

Sanchez Contreras also asserts that the BIA failed to take into consideration the unsafe conditions in El Salvador and her son's increased risks of harm and security. She cites her documentary evidence indicating that "gangs subjected children to forced labor in illicit activities, including selling or transporting drugs." She also points to her own testimony indicating that her family earned the ire of a criminal gang in El Salvador.[4]

---

[3] In her reply brief, Sanchez Contreras also appears to argue that the IJ failed to consider her documentary evidence concerning unavailability of healthcare in El Salvador. Because the argument about this evidence was not raised in her opening brief, it is forfeited. *See Alejos-Perez v. Garland*, 93 F.4th 800, 807 (5th Cir. 2024) ("Arguments raised for the first time in a reply brief or Rule 28(j) letter are forfeited.").

[4] In her BIA brief, Sanchez Contreras argued that the IJ failed to conduct a cumulative analysis of all the hardship evidence, such as finances, employment, relatives, and her son's health and education, but she did not mention crime or gangs apart from the

No. 23-60325

Even though the opinions of the IJ and BIA did not include explicit findings regarding El Salvador's unsafe country conditions in the cancellation of removal sections, those conditions were considered throughout the remainder of their opinions. The IJ included an extensive "Evidence and Testimony" section that discussed Sanchez Contreras's family's dealings with the El Salvador gangs going back to when she was a child. The BIA seemingly adopted this discussion. The BIA and IJ further discuss the gangs in the withholding removal sections of their analyses, with the BIA finding that "the entirety of the evidence of record does not reflect that [her] fear of harm is objectively reasonable." In short, El Salvador's unsafe conditions, particularly its criminal gangs, overshadowed these entire proceedings.[5]

------

context of her challenge to denial of withholding of removal. Even though 8 U.S.C. § 1252(d)(1) ordinarily requires that applicants fairly present all issues to the BIA, *Vazquez v. Sessions*, 885 F.3d 862, 868 (5th Cir. 2018), the Supreme Court recently clarified that the exhaustion requirement is not jurisdictional and therefore is subject to waiver and forfeiture, *Santos-Zacaria v. Garland*, 598 U.S. 411, 419, 423 (2023). Neither the Supreme Court nor this court has explicitly decided whether this claim-processing rule is mandatory, but courts have generally declined to decide unexhausted arguments when waiver or forfeiture is properly raised by the government. *See Munoz-De Zelaya v. Garland*, 80 F.4th 689, 694 (5th Cir. 2023). The government asserts that Sanchez Contreras's BIA brief merely made a "passing argument, without record attribution," and that she failed to point to any persuasive objective evidence that her son would be at greater risk from crime than others in El Salvador, but it does not assert that the argument is unexhausted. We therefore proceed as if this argument is exhausted.

[5] Further, even a flawed BIA decision may be upheld if there is "no reasonable possibility that" the decision would have been different absent the error. *See Ibrahim v. Garland*, 19 F.4th 819, 826–27 (5th Cir. 2021) (citations and internal quotations omitted) (explaining that this court may affirm the BIA's ultimate decision, even where the BIA makes a mistake, if "there is no realistic possibility that (1) [its] conclusion would have been different absent the error or (2) [it] would reach a different conclusion on remand").

No. 23-60325

Under *Wilkinson*'s deferential review, the IJ and BIA did not err in concluding that the "established facts" failed to demonstrate the requisite "exceptional and extremely unusual hardship" for cancellation of removal.

* * *

The petition for review is DENIED.